WILLIAM C. GILL, administrator, etc., plaintiff in error, *vs.* JACOB P. STROZIER, administrator, etc., defendant in error.

1. The presumption that the law raises in favor of a gift when a son-in-law is permitted to take negroes home with him after his marriage, by the father-in-law, and to retain possession until his death, claiming and exercising acts of ownership, must be regarded as conclusive, unless clear and satisfactory proof is made that a gift was not intended.

2. The Statute of 5th March, 1856, which permits the contents of the record of an original deed or other instrument, in writing, that has been lost or destroyed, and which had been recorded, and the record destroyed by fire, to be given in evidence by any one who has read the record thereof, applies to those deeds and instruments that are, by law, authorized and required to be recorded.

3. Declarations made by one as to his title after he has parted with the possession, are not admissible against one claiming adversely to him, nor are the declarations of a third person, unless against the interest of the party making them.

Trover, in Lee Superior Court. Tried before Judge ALLEN, at September Term, 1860.

This was an action brought by Jacob P. Strozier, as the

Gill *vs.* Strozier.

administrator of George H. Price, deceased, against William C. Gill, to recover damages for the alleged conversion by him of two negro slaves and their children, belonging to the plaintiff's intestate.

On the trial of this case, in the Court below, the plaintiff introduced as witnesses Catherine Foster, Daniel Woolbright and Lott Warren, whose testimony developed the facts: That Mrs. Eliza Delphia Jackson, who was then a widow, and the daughter of John Peteet, of Wilkes county, intermarried with George H. Price, the intestate of the plaintiff, some sixteen or seventeen years before the trial; that the marriage occurred in Wilkes county, and immediately thereafter Price and his wife went to Lee county, carrying with them the negroes in dispute; that Price asserted title to the negroes, and claimed and controlled them as his own; that he hired them out to different persons and received the benefit of the hire; that he hired the negroes to John P. Woolbright to pay the board of himself and wife, and that Woolbright had the negroes thus in his possession at the time of Price's death, which occurred some three or four years after his marriage; that Price left surviving him his said wife and one child, to-wit: John R. Price, both of whom are still in life; that Mrs. Price remained at John P. Woolbright's from the time of Price's death until she intermarried with Enoch Johns; the negroes were received by Price from his father-in-law upon his marriage.

The plaintiff also introduced an exemplification from the records of the Court of Ordinary of Wilkes county, showing an allotment and division of the negroes belonging to the estate of John Peteet, of Wilkes county, after his death, which allotment and division did not include the negroes in dispute.

The plaintiffs also proved the value of the negroes sued for, and their hire, and closed his testimony.

The defendant then introduced various witnesses, by one of whom he proved, that Price, soon after his marriage, told the witness that the negroes in dispute, which he brought home with him after his marriage, were not his, but his wife's

negroes; that his father-in-law would not give the negroes to him, but gave them to his wife.

By another witness the defendant proved, that in the year 1847 he called on the clerk for the tax books of 1843 and 1844; that the clerk handed him two tax books, (the date of which he did not notice,) from which it appeared that Price returned no slaves as taxable property, but that John Woolbright gave in two slaves, as agent of John Peteet.

By another witness defendant proved, that it was old man Peteet's habit and manner to send property with his children upon their marriage as a loan, and that it was the opinion of the witness that the negroes in dispute were loaned to Price and his wife, because old man Peteet threatened to take the negroes away from Mrs. Price after she married Johns, but was over persuaded by her to let them remain; that the witness was not present when the negroes were delivered to Price and his wife.

By another witness defendant proved, that the witness saw Woolbright claiming and controlling the negroes in dispute after Price's marriage.

Counsel for defendant then showed to the Court that a certain paper hereinafter described once had an existence; that the plaintiff had been notified to produce it, and failed to do so; that the house in which all of Woolbright's papers were deposited had been destroyed by fire; that the person who had charge of Woolbright's papers, after his death, had been applied to for the paper, and it could not be found or obtained.

Upon this showing, defendant's counsel proposed to prove by Samuel C. Wyche: That he was for a long time Clerk of the Superior Court of Lee county; that whilst he was such clerk, John Woolbright brought to him for record a paper purporting to have been executed by one John Peteet, of Wilkes county, in the presence of the necessary number of witnesses, unto John Woolbright, authorizing him to manage and control, for the use of his daughter, Mrs. Price, two negroes which he loaned her upon her intermarriage with Mr. Price; that the witness can not say exactly when the

Gill *vs.* Strozier.

paper was recorded, but it was recorded by witness, as clerk, some time in 1842 or 1843, and after Price's marriage; that Price then lived in the lower part of Lee county; that the court-house and all the record's of Lee county were destroyed by fire a few years before the trial.

Upon objection made thereto, this testimony was repelled by the presiding Judge unless the execution of the power of attorney were proved, as it was not a paper which the law required to be recorded.

Counsel for defendant offered the depositions of Seaborn Callaway and Peter Lumsford, to prove: That old man Peteet told them that he had loaned the negroes in dispute to his daughter, Mrs. Price, for the benefit of herself and children, and that Peteet told one of the witnesses the names of those called by him to bear witness to the loan, but he does not recollect the names of the witnesses.

This testimony, upon objection made thereto, was repelled by the Court.

The defendant also offered the depositions of Mrs. Martha Peteet, to prove: That she had heard, in the family of old man Peteet, that he sent the negroes in dispute home with Mrs. Price when she went to house-keeeping with her first husband, and that when he died, the old man took the negroes home again; that old man Peteet sent the negroes to his daughter some five or six months after her intermarriage with Price, and that after the death of Price, old man Peteet went after the negroes, but before he arrived, Mrs. Price had intermarried with Johns, and her father permitted her to keep the negroes; that after old man Peteet's death, the negroes were brought back, and put in and divided when the other property of old man Peteet was divided; the witness can not state from whom he learned these facts, but learned them from the family of old man Peteet.

This testimony was rejected by the Court upon objection made to the same.

The defendant also offered the depositions of Jonathan Davis, to prove: "That he learned from John Woolbright, and that it was understood in the neighborhood, that Wool-

bright was claiming and controlling the negroes, either as trustee or by power of attorney from old man Peteet, to be held as the property of Peteet, with a trust for the benefit of his daughter, Mrs. Price.

This testimony was also excluded by the Court, upon objection made thereto.

The testimony of John Moore, as to the sayings and habits of old man Peteet, in giving property to his children, was, on motion, excluded by the Court.

The jury found for the plaintiff the negroes in dispute and $1,000 00 for their hire.

Counsel for defendant then moved for a new trial on the grounds:

1. That the verdict was contrary to law and evidence.

2. Because the Court erred in rejecting the testimony of Samuel C. Wyche as to the contents of the power of attorney from old man Peteet to John Woolbright.

3. Because the Court erred in repelling and excluding the testimony of Callaway, Lumsford, Mrs. Peteet, Moore, and Davis, as hereinbefore stated.

The presiding Judge heard the motion for a new trial at the March Term, 1861, and after argument had, the new trial was refused, and that refusal is the error alleged.

VASON, DAVIS & Co., and G. J. WRIGHT, for plaintiff in error.

STROZIER and SLAUGHTER, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

1. The verdict is not contrary to and against the weight of the evidence, nor against the law. On the contrary, there is a sufficient evidence to support it. The evidence of Mrs. Catherine Foster and Daniel Woolbright was, that Price, the intestate, after his intermarriage with Delphia or Elizabeth, the daughter of John Peteet, then in life but since deceased, brought home to the county of Lee, where he (Price) lived, from the county of Wilkes, where his father-in-law (Peteet)

lived, the two negro girls, Barbara and Milly, from whom the balance of the negroes in controversy are descended, and that he continued in possession of them from that time to his death, being several years, and during the time he claimed them as his own, hired them out and received and appropriated money, and otherwise controlled them as his own property. This was sufficient evidence to support the verdict. On the other hand, there is some testimony going to show that the father-in-law (Peteet) only let them go into his possession as a loan, for the use of Mrs. Price, he retaining the right to take them back or make such other disposition of them as he thought proper, but this testimony is not sufficiently clear and satisfactory to overcome the presumption of ownership arising from the possession, use and claim of title by the plaintiff's intestate Price; indeed, upon a careful examination, it will be found to be very unsatisfactory. Benjamin Ramsey, one of the witnesses, testifies to too much. He says that Price told him, in his life time, that the two negro girls were his wife's property, and not his, and that his father-in-law (Peteet) would not give the negroes to him, but gave them to his wife. I know of no rule that would create a separate estate in the wife by parol declaration, or that would allow it to be proven in that way. If that testimony is worth anything, in the absence of a conveyance of the negroes to the separate use of the wife, it is to establish the plaintiff's title to the negroes; that is, that although Peteet might have intended differently, yet the title was in the husband. This evidence certainly does not establish a loan or title in Peteet at that time. The next and main witness is John M. Moore. He says that he "is fully of the opinion that the negroes were loaned to Elizabeth Price by her father," but he says that he does not recollect that he was present when they were delivered; that he "was always under the impression that the negroes were loaned, as all the rest were loaned;" and again, "that she (Mrs. Price) and all of Mr. Peteet's children took their property in the form of a loan." Now, there is nothing positive in this evidence. The witness testifies to Mr. Peteet's habit in letting his

children have property as a loan, and not as a gift.   Of this ·
particular transaction he knows nothing, except what he
believed, and what he heard from Mr. Peteet's policy toward
his other children.

The only other witness is Jonathan Davis, who says, in
his answer to a cross interrogatory, that he saw John Wool-
bright claiming and controlling the negroes as stated in his
answer to the direct interrogatory, but by reference to that
answer he says, " John Woolbright claimed the control of the
negroes, either as trustee or by power of attorney." Taking
the whole together it amounts to nothing at all, and the
answer to the cross interrogatory standing by itself, as agreed
upon in the brief of evidence, that is, that he " saw John
Woolbright claiming and controlling the negroes," giving it
all that is claimed for it, that is, that he was claiming and
controlling for John Peteet, is not sufficient to overcome the
presumption in favor of the plaintiff, for it only raises a pre-
sumption itself; it is not positive evidence of the title being in
Peteet, besides there is no evidence that Price himself knew
of and assented to this claim or the exercise of this control.
Had the finding of the jury been for the defendant instead
of the plaintiff we can not say that we would have disturbed
it, but on this evidence the verdict is certainly not so strongly
and decidedly against the weight of the evidence as to require,
or even justify us in disturbing it.

The third ground in the motion for new trial, that is,
that the finding for him was excessive, was abandoned.

2. We think the Court below properly rejected the testi-
mony of the witness, Samuel C. Wyche, to prove the contents
of the lost or destroyed paper or power of attorney, or rather
the contents of the record thereof which had been destroyed
by fire.

This testimony was offered under the 2d section of the
Act of 5th March, 1856, pamphlet, page 138, which is in
the following words :

" Where any original deed, or other instrument in writing,
is lost or destroyed, which has been recorded, and the record
of such deed, or other instrument in writing, has been burned,

the contents of such record may be proved by the clerk who recorded the deed, or other instrument in writing, or of any clerk who had copied said record, or by any person who has read the same, and said testimony may be given in evidence to the jury in any case when it becomes necessary for the assertion of the rights of any of the parties."

This statute must be understood as having reference only to that class of instruments in writing, such as deeds, bills of sale, etc., that are authorized and required by law to be recorded, and which, when recorded according to the requirement of law, are allowed to go in evidence to the jury without further or other proof of execution; at least under that statute the contents of only that class of instruments in writing, when recorded, are allowed to go to the jury as evidence without other proof of the execution of such paper.

Had the record of this deed not been burned, a certified copy of the deed from the record could not have gone to the jury as evidence without proof of the execution of the original, notwithstanding the destruction of the original so recorded; because, the law does not require or authorize such a paper—a simple letter of attorney authorizing one to hold personal property and act as agent for another—to be recorded, and provide, that when recorded, it may be given in evidence without further proof of execution. This statute authorizes parol testimony, or the recollection of the witness of the contents, in case of the destruction of the record, to be substituted or to stand in place of the record itself, not to do more than this. If the paper recorded is not one authorized to be recorded, nor is recorded in the terms of the law, it is in neither case a record, and a copy of such paper found on the clerk's books is entitled to no more credit or weight than one found on the books of a private person.

3. The testimony of the witnesses (Mrs. Peteet, Callaway and Lumsford and part of that of Moore) was properly withdrawn from the jury by the Court, as it consisted of the declaration of John Peteet, the former owner of the negroes, made after he had parted with their possession, and after

Price had acquired his title under him.    Settle vs. Allison, 8 Ga., 207.

The part of the witness Davis' testimony excluded was still more objectionable, because it consisted of the declara-tions of John Woolbright, who never did have the posses-sion of the negroes, nor, so far as we are informed, a right to their possession.

Let the judgment be affirmed.