# CHARLESTON.

CASTO *v.* FRY *et al.*

Submitted January 22, 1890.—Decided January 30, 1890.

1. FRAUDULENT CONVEYANCES — EVIDENCE — DECLARATIONS OF GRANTOR.

It is well settled that the declarations of a grantor, made subsequent to the conveyance, are not admissible to affect the title of his grantee; certainly if made a year subsequent.

2. FRAUDULENT CONVEYANCE—EVIDENCE.

When a deed is assailed by third parties on the ground of fraud, it is admissible to show, in addition to the consideration expressed in the deed, that a substantial and valuable consideration was paid, or the converse.

3. FRAUDULENT CONVEYANCE—NOTICE

A worthless husband, indebted to insolvency, in pursuance of an agreement that his wife would abandon her purpose to sue for a divorce, and that she and her sons would pay certain specified debts of the husband, which he asserted and they believed were all he owed, amounting to over $800.00 conveyed to a third person, who on the same day conveyed to the wife, real estate worth from $600.00 to $800.00. The wife and sons at the time assumed to pay, and afterwards, in good faith and without notice of any fraud, did pay off said debts. *Held:* The said conveyance is valid as against the creditors of the husband whose debts existed prior to and at the time of the conveyance, but of which the wife had no notice.

*C. E. Hogg* for appellant.

*Simpson & Howard* for appellees.

SNYDER, PRESIDENT:

Appeal from a decree of the Circuit Court of Mason county rendered February 24, 1882, in the suit of James N. Casto against Henry Fry, Stephen Thomas, and Martha E., his wife, Rankin Wiley, and others.

So much of the facts and proceedings as are necessary for the comprehension and decision of the questions presented by this appeal are as follows: In the year 1876 the plaintiff and the defendant Stephen Thomas became the sureties of the defendant Henry Fry on his official bond as constable of

one of the districts of Mason county. In 1879 the said Fry became a defaulter, and in 1880 the plaintiff, as one of his sureties, was compelled to pay for him sundry claims, amounting to about $300.00. When the defendant Stephen Thomas executed said official bond as surety for Fry, he was the owner of a house and lot in the town of Hartford City, in Mason county. Afterwards, in August 21, 1878, he and his wife conveyed this house and lot to Rankin Wiley, and Wiley on the same day conveyed the same to Martha E. Thomas, the wife of said Stephen. The consideration recited in each of these deeds is one dollar. In February, 1881, the plaintiff exhibited his bill, in which he stated the foregoing facts, and averred that the aforesaid conveyances were made without any valuable consideration and for the purpose of hindering, delaying and defrauding the plaintiff and other creditors of the said Stephen Thomas; that the said Thomas and Henry Fry were insolvent; and prayed that said conveyances might be declared void as to the debt due the plaintiff from said Thomas, and the said house and lot subjected to the payment thereof.

The defendants Thomas and wife filed their joint answer, denying that the said conveyances were made without a valuable consideration, or with the intent to hinder, delay or defraud the plaintiff or any one else, or that there was any notice of any fraudulent intent whatsoever on the part of the defendants, Wiley and Martha E. Thomas. Depositions were taken by both parties, and the court by its decree dismissed the bill as to the defendants, Thomas and wife, to Wiley, and the plaintiff appealed to this Court.

The depositions prove that the defendant, Stephen Thomas, was in the habit of drinking, and often making himself very disagreeable to his wife and family, and on account of his bad conduct his wife had determined to sue for a divorce and alimony; that he had two sons grown who were industrious, and received good wages for their work; that from supplies furnished by them their mother kept boarders; that the husband had for several years been engaged in no regular business, but occasionally did odd jobs of butchering and some trading; that he did nothing to support his family, but, on the contrary, by has bad habits and profligacy he had be-

come indebted to C. Eggenschwiler and others in an amount aggregating over $800.00. A short time before the aforesaid conveyances were made, Eggenschwiler, to whom he owed over $400.00, informed him and his family that unless his debt was paid or secured he would sue and subject the house and lot to its payment. His wife about this time applied to an attorney to obtain a divorce and alimony, and through this attorney an agreement was made between the husband on the one side and the wife and two sons on the other side, by which, in consideration that the wife would abandon any suit for a divorce, and that she and the sons would pay and satisfy certain debts amounting to over $800.00, which he affirmed was all he then owed, he agreed to convey to the wife the house and lot in controversy, and that in pursuance of this agreement the aforesaid conveyances were made so as to vest the title thereto in the wife as her separate estate. At the time of the conveyance the wife and sons assumed the payment of said debts, and afterwards paid and satisfied the same. The value of the house and lot is shown to have been at the time $600.00 or $800.00. There is not a particle of testimony to show that either Wiley or Mrs. Thomas, the grantors in said conveyances, had at the time any knowledge or notice that Stephen Thomas was surety on the bond of Fry, or that he owed any debts other than those which the wife and sons then assumed and afterwards paid. On the contrary, the wife testifies positively that she had no such notice, and did not have until more than a year after the conveyances had been made and recorded.

The only attempt on the part of the plaintiff to prove the want of consideration is by the deposition of Wiley, who says that there was no consideration for said conveyances. All that Wiley could have known, and all that he could have intended by this statement, was, that he neither paid nor received any consideration in respect to said conveyances. That such was the fact is conceded; for the whole considertion passed from the wife and sons to the husband or to his creditors, and Wiley was simply the instrument through which the legal title was transferred from the husband to the wife. And the only effort to prove that the conveyances were fraudulent is the depositions of witnesses who testify

that nearly a year after the deeds had been made and recorded they heard the grantor, Stephen Thomas, say that he had long ago fixed everything so that the Fry bond could not trouble him. The law is well settled that the declarations of a grantor, made subsequent to the conveyance, are not admissible to affect the title of the grantee. *Gillespie* v. *Burleson,* 28 Ala. 551; *Gill* v. *Strozier,* 32 Ga. 688; 1. Whart. Ev. § 1165.

It is contended for the appellant that, because the deeds recite the consideration as one dollar, the grantee is estopped from showing that any larger consideration passed. It is true, even in equity, that a party claiming under a deed is bound by the general character of the consideration stated in the deed. He can not, for instance, as a part of his own case, if money be averred, prove natural love and affection; or, if natural love and affection be averred, prove money. But, when the deed is assailed by third parties on the ground of fraud, a larger field is opened, and, as relevant evidence to the issue of fraud, it is admissible to show, in addition to the consideration of affection expressed, a valuable consideration paid, or the converse. And when a deed recites no consideration, or an inadequate one, the party claiming under it may prove a substantial consideration, though as against a third party contesting the deed, the *onus* of proving the consideration will rest upon the party claiming under it. 2 Whart. Ev. § 1046; *Rogers* v. *Verlander,* 30 W. Va. 619, (5 S. E. Rep. 847.)

Upon the whole evidence and the law, it seems to me that there was an adequate consideration for the aforesaid conveyances, and that there was no fraud in the transaction. If there was any fraudulent purpose on the part of the grantor, it is certain that there is no evidence in the record to show that the grantee, Mrs. Thomas, or her grantor, Wiley, had any notice or knowledge of it. Without such notice to Mrs. Thomas she is a *bona fide* purchaser, and by the terms of our statute she is unaffected by any fraudulent purpose which may have existed in the mind of her husband. Section 1, c. 74, Code 1887. The decree of the Circuit Court is therefore affirmed.

AFFIRMED.