# CHARLESTON.

## FRY, TRUSTEE *v.* FEAMSTER *et al.*

Submitted January 25, 1892.--Decided April 13, 1892.

1. DEED---WILLS.

A deed executed by a father to his two daughters upon certain trusts declared on the face of the deed contains the following clause descriptive of the property conveyed: "*First.* All his household and kitchen furniture at present at the family residence in the town of L. and on the home-farm; all live stock, grain, hay and products of all kinds; all his farming implements of every description on the home-place or Gabbert land; all debts, claims and rights of recovery which the said grantor then possessed, and any and all other personal estate of any and every description whatsoever." *Held,* that this description included all money possessed by the grantor at the time said deed was executed and delivered, and that any subsequent attempt to dispose of the same by will or otherwise would be inoperative.

2. DEED—EVIDENCE—DECLARATIONS.

The declarations of a grantor in a deed in disparagement of his title, if made before he parts with it, are admissible against his grantee, but those made afterwards are inadmissible.

3. COMMISSIONER IN CHANCERY.

Where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight and should be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, where the findings of the commissioner have been approved and sustained by the decree of the inferior court.

*J. W. Harris* and *J. C. McPherson* for appellant cited 26 W. Va. 437; 23 Gratt. 42; 16 Gratt. 355; 55 Am. Dec. 405.

*Gilmer & Gilmer* for appellee cited 2 Perr. Tr. §§ 828, 835, 836, *et seq.;* Code, c. 13, s. 17 sub. div. 16; 4 Min. Inst. 1219 (t. p. 1356).

ENGLISH, JUDGE:

On the first Monday in February, 1890, Susan B. Fry, in her own right and as trustee, filed her bill in the Circuit Court

of Greenbrier county against Mary J. Feamster in her own right and as trustee, Annie, Maud, and Patsey Feamster, infant children of said Mary J. Feamster, Adelaide Huffnagle, deceased, and Lucy, Lillie, and Joseph Fry, infant children of Susan B. Fry, in which the plaintiff alleged that she and the defendant Mary J. Feamster were sisters — the daughters of Jacob and Adelaide Huffnagle; — that the defendants Annie, Maud, and Patsey Feamster were infant children of the defendant Mary J. Feamster, and the defendants Lucy, Lillie and Joseph Fry were the infant children of plaintiff;—that the plaintiff's father, Jacob Huffnagle, departed this life in December, 1888, and that he did not owe anything at the time of his death except the three thousand dollars to Adelaide Huffnagle, thereinafter mentioned;—that on the 21st day of March, 1884, said Jacob Huffnagle made and acknowledged a deed, by which he conveyed all of his real and personal property to the plaintiff and said Mary J. Feamster, trustee ;—that by the terms of said deed plaintiff and said Mary J. Feamster were constituted trustees to hold the real estate conveyed by said deed for the maintenance of said Jacob Huffnagle and his wife, the defendant Adelaide Huffnagle, during their lives, also for the support and maintenance of the families of plaintiff and the defendant Mary J. Feamster, and the sum of three thousand dollars was to be paid to the defendant, Adelaide Huffnagle, and the payment thereof was charged on the real estate given to plaintiff and her children ;—that the real estate of the said Jacob Huffnagle was partitioned between the infant children of plaintiff and the infant children of said Mary J. Feamster, plaintiff and said Mary J. Feamster only holding the legal title for their lives, the remainder in fee to their said children ;—that by the terms of said deed of March 21, 1884, said Jacob Huffnagle conveyed all of his personal property, of any and every description whatsoever, to plaintiff and said Mary J. Feamster, to be held by them as trustees until they saw proper to divide the said personal property between them, at which time they were to take the same in equal parts, one moiety to each absolutely, which deed was admitted to record the 29th day of March, 1884, in the office of the clerk

of the County Court of Greenbrier county, a copy of which was exhibited with the bill;—that, at the time said deed of March 21, 1884, was made, said Jacob Huffnagle had in his possession three thousand dollars in money, besides a large amount of other personal property;—that, after the death of said Jacob Huffnagle, all of his notes, bonds and accounts were divided between plaintiff and said Mary J. Feamster; that plaintiff did not know of the fact that three thousand dollars in money was on hand at the time the deed was made or at the time the division was made;—that the defendant, Mary J. Feamster, and her family lived in the country with said Jacob Huffnagle, before March 21, 1884, at that time, and until his death in December, 1888;—that at the death of said Jacob Huffnagle he had the three thousand dollars in money before mentioned in a desk in his house, and that the said Mary J. Feamster got possession of said money secretly and claudestinely, and appropriated the same to her own use, and loaned the same as her own money;—that plaintiff did not know of her having gotten said money until the fall of 1889;—that at the time a division of the notes and bonds left by their father was made plaintiff did not dream of there being any other personal property, and the said Mary J. Feamster, although she had gotten the said three thousand dollars in money out of her father's desk, never told plaintiff of the fact, but concealed it from her.

Plaintiff contends that the said sum of three thousand dollars in money passed by the deed of March 21, 1884, to her and said Mary J. Feamster as trustees, and that she is entitled to have said sum applied to the debt due Adelaide Huffnagle;—that it was a fraud for the said Mary J. Feamster, one of the trustees, to take the whole of said sum to herself as her own property, and that plaintiff is entitled to call upon her to account as trustee under said deed of trust, and to turn over the one half of said money to plaintiff.

Plaintiff alleges that she is ready and willing to settle her accounts as trustee under said deed of trust; that she has incurred debts in the maintenance and support of her family, and is entitled to one half of said sum to pay said

debts; that the defendant Adelaide Huffnagle is one of the beneficiaries under the said deed of March 21, 1884, and that she in January, 1889, qualified as administratrix of Jacob Huffnagle;—that she aided and assisted Mary J. Feamster in getting possession of said money left by said Jacob Huffnagle in his desk at the time of his death;—that she is advised that the defendant, Mary J. Feamster, claims there was only one thousand six hundred and fifty dollars in the said desk at the time said Jacob Huffnagle died, and that she only got that sum, and she is advised she is entitled to have said sum of money so left in the desk by said Jacob Huffnagle applied on the three thousand dollars due Mrs. Adelaide Huffnagle under the deed of March 21, 1884; and she prays that said Mary J. Feamster be required to settle her accounts as trustee;—that the defendant Mary J. Feamster be required to disclose the amount of cash found by her in her father's desk and taken possession of by her, and for general relief.

The clause in said deed—a copy of which is exhibited with the bill—from Jacob Huffnagle to Mary Jane Feamster and Susan B. Fry in trust, which becomes material in this case, is the one which contains a description of the personal property thereby conveyed, and reads as follows: "All his household and kitchen furniture at present at the family residence in the town of Lewisburg and on the home farm; all live stock, grain, hay, and products of all kinds; all his farming implements of every kind and description on the home place or Gabbert land; all debts, claims, and rights of recovery which the said Jacob Huffnagle now possesses, and any and all other personal estate of any and every description whatsoever."

The infants having answered by guardian *ad litem*, an order was made in vacation on the 12th of February, 1890, and the cause was referred to a commissioner to ascertain what property conveyed by Jacob Huffnagle to Mary J. Feamster and Susan B. Fry, trustees by the deed dated March 21, 1884, was on hand at the time of his death, and what disposition was made of the same; any other matter deemed pertinent by the commissioner, or required by either party.

On the 26th day of April, 1890, Mary J. Feamster, filed her demurrer and answer to plaintiff's bill, and the plaintiff joined in the demurrer, and replied generally to the answer, and in said answer said defendant says, that the three thousand dollars mentioned in the bill was not included in the terms or in the intention of the deed in the bill mentioned from Jacob Huffnagle to plaintiff and respondent, dated March 21, 1884, and did not pass by said deed;—that the said Jacob Huffnagle had an only sister, Susan Beall, residing in the State of California, and that in the fall of 1883, prior to making said deed, he laid aside among his private papers at home the said sum of three thousand dollars for the purpose of making a gift thereof to her at such time as he might think proper, and had the same on hand at the time he made the deed aforesaid;—that this deed was an entirely voluntary act, made by one possessed of a large estate, free from debt, for the purpose of giving that direction to his property in his lifetime which he wished it to take after his death;—that in the fall of 1886, the said Jacob Huffnagle was advised of the death of his sister, and in November, 1886, wrote and signed a paper in the following words : "In fall of 1883 I set apart a certain amount for benefit of my sister in Cal. She having died lately, I intend this sum for my daughter Mrs. Feamster, to make her more equal with Mrs. Fry. J. HUFFNAGLE ;"—that said Huffnagle inclosed this paper with the letter advising him of the death of his sister, and filed the same in his desk, where it remained, uncancelled and unrevoked until after the death of said Huffnagle, where it was found by said Adelaide Huffnagle; that said Mary J. Feamster was called and familiarly known by her father and the family by the name of "Gillie."

The defendant says further, that on the 15th day of December, 1887, the said Jacob Huffnagle, who was then and until his death on the 10th day of December, 1888, suffering from heart-disease, and in infirm health, wrote out and signed wholly with his own hands the following paper : "Sept. 15th, 1887. Gillie : You will find in my desk, in large envelope, three thousand dollars in currency, that I set apart to buy a home in California for my sister, Susan,

who took care of mother for many years in sickness and health. This amount was outside and apart from everything I conveyed to my children and grandchildren. My sister having died lately won't need it, and you and children losing the Salem property leaves you and your children short about six thousand dollars." All of which, as above written, was on one side of the sheet written on, and on the following page—being on the reverse side of the same sheet —the said Huffnagle continued as follows: "1888, which you will find under a small box of iron on right side of my desk. You will keep this to yourself, as others might complain. Do the best you can with it, and securely invest it somewhere. I have written this, as I take the train to White Sulphur, as provision against accident. There will be due the old lady on the 1st January next, three thousand dollars. There may be bonds enough to pay her bonds in desk in black pocketbook;"—which communication was addressed in the handwriting of said Huffnagle, "To Mrs. Mary J. Feamster, now at Ronceverte. Private." Said paper was then enclosed in an envelope of ordinary letter size, and directed to "Mrs. Mary Jane Feamster, Mount Airy, Greenbrier County, W. Va.," and on the lower corner the following directions: "If by any means I should be cut off suddenly, I wish this letter delivered to the person to whom it is directed. 1888. J. HUFFNAGLE"—which paper and envelope were filed as an exhibit with said answer.

Further answering the defendant says, that the papers thus written, inclosed, and addressed as aforesaid were placed by said Huffnagle in his desk, and were there found after his death; that in the place designated in said paper was found by said Adelaide Huffnagle the sum of one thousand six hundred and fifty dollars, and that this sum, and no more, was paid over to respondent in accordance with the directions aforesaid; that said papers were testamentary papers, and at the time of the death of said Jacob Huffnagle were wholly unrevoked; that they constitute the last will and testament of said Huffnagle, who, at the time said papers were respectively executed by him, was in full possession of testamentary capacity; and that under said will she became and was fully entitled to have and hold said

one thousand six hundred and fifty dollars, and any other portion of said three thousand dollars that may be found or identified; and that, if said papers are testamentary in their character, the plaintiff can not recover in this proceeding, and is not entitled to the relief prayed for, whether said papers have been probated as the will of said Huffnagle or not; and that, if said papers be not of a testamentary character, they constitute, in connection with the delivery of the said sum of one thousand six hundred and fifty dollars, and the other circumstances stated, a valid gift *mortis causa*, and that neither the plaintiff nor any one else except herself is entitled to said money;—that there are no debts outstanding against the original trust-subject, other than the gifts made by said Huffnagle by said deed of March 21, 1884;—that the plaintiff had no right to create any debts binding the trust-subject, as the said Huffnagle retained in said deed absolute control during his life of all the real and personal estate therein mentioned.

Respondent denies that plaintiff is entitled to any part of said one thousand six hundred and fifty dollars, and says that, if she is entitled, she has a full, complete and adequate remedy at law;—that the order of reference entered in the cause was premature;—that there are no trust accounts to settle, and that the commissioner to whom said account had been referred should so report, *etc.*

This answer was replied to specially, putting in issue the affirmative allegations thereof.

Many depositions were taken in the cause, and on the 9th day of April, 1890, the commissioner filed his report, which was excepted to by both M. J. Feamster and S. B. Fry, and on the 30th day of June, 1890, a decree was rendered in said cause overruling the demurrer to plaintiff's bill, and holding that the one thousand six hundred and fifty dollars claimed by the defendant M. J. Feamster in her answer passed under the deed made by Jacob Huffnagle on the 21st day of March, 1884, to plaintiff and M. J. Feamster, trustees, and was and is part of said trust-fund, and that M. J. Feamster must account for and pay over to the plaintiff one half of said sum, with interest thereon from the time the same came into her hands; and the cause

was recommitted to the commissioner, to settle the accounts of M. J. Feamster and S. B. Fry as trustees, under the deed of March 21, 1884, and to settle the account of each one with the trust-fund, *etc.*

On the 3rd of November, 1890, the commissioner returned his report in pursuance of said decree, which was excepted to by plaintiff and by defendant Mary J. Feamster on several grounds, and on the 1st day of May, 1890, a decree was rendered in the cause, overruling all of said exceptions, holding that the defendant M. J. Feamster holds the one thousand six hundred and fifty dollars found in her father's desk in trust for the purposes named in the said deed made by Jacob Huffnagle on March 21, 1884, and that the plaintiff was entitled to a division of the same, and that, on settlement of the account between them on the division made of the said personal assets, including the one thousand six hundred and fifty dollars and excluding amount paid by Jacob Huffnagle for the Gabbert land, there is due the plaintiff, as trustee, from the trust-fund, the sum of seven hundred and fifteen dollars and sixty nine cents as of November 1, 1890, and that the whole of said sum is in the hands of the defendant M. J. Feamster, and directed said M. J. Feamster out of the trust-fund in her hands, or out of any assets in her hands derived from said trust-fund, to pay to the plaintiff, as trustee, said sum of seven hundred and fifteen dollars and sixty nine cents with interest from November 1, 1890.

And it further appearing that the Gabbert land was paid for by Jacob Huffnagle in his lifetime after the execution of the deed of March 21, 1884, out of the fund in the desk which had been kept by Jacob Huffnagle for special purpose and which passed by said deed, and that when said land had been conveyed to plaintiff and M. J. Feamster, the plaintiff, in ignorance of the existence of the money which was or had been in the desk, made a deed to M. J. Feamster, conveying her half of said land, the court held that, as between the parties to this suit, the said land was personal assets, subject to the trust created by the deed of March 21, 1884, and that the plaintiff, as trustee, is entitled to recover of the trust-funds in the hands of M. J. Feam-

ster, or any assets in her hands derived thereform, the sum of three hundred and fourteen dollars and eighty six cents, with interest from November 1, 1890—in all, the sum of one thousand and thirty dollars and fifty five cents, with interest from that date; and leave was reserved to the plaintiff to apply to the court for further relief; and from these two decrees the defendant Mary J. Feamster obtained this appeal.

Counsel for the appellant insist that the court below erred in overruling the demurrer to the plaintiff's bill. Did the court below err in so ruling?

In determining this question we are confronted at once with the fact that the bill calls for the construction of the deed executed by Jacob Huffnagle on the 21st day of March 1884; and upon the proper construction of a clause in said deed depends the most vital question in the case. Should we construe it in one way, the three thousand dollars found in the desk of Jacob Huffnagle would be held to be a trust-fund, to be divided equally between the plaintiff and defendant M. J. Feamster, for the purposes of the trust. Should we construe it another way, and hold that the papers found in the envelope with said money (which had in some way been reduced to one thousand six hundred and fifty dollars) were testamentary in their character, and constituted the last will and testament of Jacob Huffnagle, the money so found, and also the land which had been bought with a portion of said three thousand dollars by Jacob Huffnagle after the execution of said deed, would belong entirely to the defendant M. J. Feamster.

It is also charged in the bill that at the time of the division of the notes, bonds, *etc.*, left by their father, she knew nothing of the existence of said three thousand dollars and that the defendant M. J. Feamster concealed the fact from her, and that it was a fraud on the part of said M. J. Feamster, one of the trustees, to take the whole of said sum to herself as her own property, and plaintiff was entitled to call upon her to account as trustee

The truth of these allegations being conceded by the demurrer, we can but say that the case presented by the bill entitles the plaintiff to come into a court of equity for re-

lief.   Coming, then, to the merits of the case, the first ques-
tion I propose to consider is the legal effect of the clause in
said deed of March 21, 1884, by which said Jacob Huff-
nagle conveyed to his two daughters, in trust for certain
purposes therein specified, after mentioning certain articles
of personal property specifically "all debts, claims, and
rights of recovery which the said Jacob Huffnagle now pos-
sesses, and any and all other personal estate of any and every
description whatsoever."

Bouvier in his Law Dictionary, under the head of "Per-
sonal Property," says : "The essential idea of personal
property is that of property in a thing movable or separa-
ble from the realty," *etc.*   Schouler, in his valuable work
on Personal Property (volume 1, p. 3, § 2) says : "The term
'personal property,' using the word 'property' with refer-
ence to the thing owned, and not the right of ownership,
embraces at common law all those things in which one may
have a right and interest to the exclusion of others, with
the exception of what we commonly designate in these
days as 'real estate.' "   In the following section he says :
"The leading essential quality of personal property in all
systems of jurisprudence—that which serves more nearly
than anything else to mark the meaning and to distinguish
personal from real property—is its mobility.   Things real,
like lands, trees, and houses, have a fixed locality ; they are
immovable, so to speak.   But things personal, such as
money, jewelry, clothing, household furniture, boats, and
carriages, are said to follow the person of the owner wher-
ever he goes," *etc.*

So, also, our Code, c. 13, s. 17, cl. 16, provides :   "The
words 'personal property' or 'personal estate' include goods,
chattels, real and personal, money, credits, investments,
and the evidences thereof."

That the three thousand dollars in controversy was in the
possession of Jacob Huffnagle on the 21st of March, 1884,
is shown by the written statement signed by said Huffnagle,
which was found in the envelope, with said money, in
which he says :   "In the fall of 1883 I set apart a certain
amount for benefit of my sister in Cal. ;" and in the letter
of Mrs. M. J. Feamster, found in the same envelope, he

says: "Gillic: You will find in my desk, in large en-
velope, three thousand dollars in currency, that I set apart
to buy a home in California for my sister, Susan;" and
Mrs. Huffnagle, in her deposition, states that said money
was in his possession in his desk, locked up, on the 21st of
March, 1884.

This fact being established, the question is whether said
money was conveyed to Susan B. Fry and Mary J. Feamster
for the purpose set forth in said trust-deed, and thereby be-
came a part of the trust fund.   We have seen that money is
included in the general term "personal estate," and said deed
was not only delivered to the grantees in the lifetime of the
grantor, but was admitted to record on the 29th day of
March, 1884.

Schouler (2 Pers. Prop. § 88) says : "But deeds of gift are
sometimes to be found to say nothing of the voluntary
family settlements by which property is so often transfer-
red in the mass.   A deed imports consideration, and the
presence of this implied consideration is said to render a
deed of itself sufficient to pass the property in goods.   It
would appear, then, that, in the absence of an actual cor-
poreal delivery of the chattel itself, a gift can only be con-
summated by deed or other instrument under seal; not, in
the latter instance, because the delivery of the deed is a
symbolical delivery of the property, but on the principle of
estoppel."

If, then, this money composed a part of the personal
property of Jacob Huffnagle which was in his possession on
the 21st of March, 1884, and the same passed to the grantees
in the deed executed by him, the next question we are to
consider is as to what effect, if any, the papers found in the
envelope with said money could have upon the ownership
of the same, and we can not regard these in any other light
than that of written declarations, made by the grantor in
said deed subsequent to the execution thereof, as to what
property was intended to be included and embraced in
said deed.   In his letter to M. J. Feamster he states, in
speaking of the money, that "this amount was outside and
apart from everything I conveyed to my children and grand-
children;" that "it was set apart to buy a home for his sis-

ter in California." These declarations, however, can not be received to affect the plain and unambiguous provisions of the deed.

We find in the case of *Boylan* v. *Meeker*, 28 N. J. Law, 289, the court, in its opinion, says : "The rule is admitted by all that the declarations of the grantor of a deed in disparagement of his title, if made before he parts with it, are admissible against his grantee, but those made afterwards are inadmissible." See, also, *Casto* v. *Fry*, 33 W. Va. 449 (10 S. E. Rep. 799).

The language contained in the deed under consideration unquestionably conveyed and transferred to the grantees the title to all money he had in his possession at that time, which, together with the real estate therein conveyed, was to be held by them subject to the trusts therein imposed ; and, even should the papers found in the envelope with this money be regarded as testamentary in their character, the said Jacob Huffnagle could not devise or bequeath property after he had parted with the title thereto by a deed of conveyance. Whatever intention he may have entertained as to the disposition of this money by giving it to his sister, he never carried out such intention, but retained the money in his possession ; and the evidence shows that he so retained it at the date of said deed, by which it passed to said grantees.

The question as to whether the Church or Gabbert land was paid for by Jacob Huffnagle out of the three thousand dollars which had been placed in his desk for the purpose of providing a home for his sister is one purely of fact, and the same may be said with reference to the other questions which were submitted to the commissioner in this cause. The findings of the commissioner were excepted to. The court below overruled the exceptions, and comfirmed said report ; and this Court has several times held that, where questions purely of fact are referred to a commissioner, his finding will be given great weight, though not as conclusive as the verdict of a jury, and should be sustained, unless plainly not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court when the findings of a

commissioner have been approved by the court below. See *Roger* v. *O'Neal*, 33 W. Va. 159 (10 S. E. Rep. 375); *Handy* v. *Scott*, 26 W. Va. 710 ; *Boyd* v. *Gunnison*, 14 W. Va. 1 ; *Graham* v. *Graham*, 21 W. Va. 698.

Applying these rulings to this case, the action of the Court below in overruling the exceptions to said commissioner's report and the decrees complained of must be affirmed, with costs and damages

AFFIRMED.