# CHARLESTON.

KENEWEG CO. *et al. v.* SCHILANSKY *et al.*

Submitted Sept. 9, 1899—Decided Dec. 2 1899.

47   287̄
54   613
47   287̄
55   542
47   287
61   551

1.  EQUITY JURISDICTION—*Fraudulent Transfer.*
    A court of equity, ancillary to its jurisdiction to set aside a fraudulent transfer of property, may take the necessary steps to preserve the property involved during the pendency of the litigation.  (p. 288).

2.  FRAUD—*Notice—Purchaser.*
    If the circumstances involved in the making a fraudulent transfer of property are sufficient to put a man of ordinary prudence and experience in business transactions on inquiry, he must be held, though a purchaser for value, to have notice of the fraudulent intent of his vendor to delay, hinder, and defraud his creditors.  (p. 289).

3.  FACTS—*Commissioner's Finding.*
    The finding of a commissioner as to facts confirmed by the circuit court will not be disturbed unless plainly erroneous.  (p. 294).

4.  FACTS—*Commissioner's Finding.*
    On the other hand, if such finding is not justified by the evidence, it will be set aside, and the decree founded thereon will be reversed.  (p. 290).

5.  DECREE—*Pleadings— Proof.*
    A decree is the conclusion of the law from the pleadings and proofs, and where there is a failure either in the allegations or proofs there can be no decree.  (p. 291).

Appeal from Circuit Court, Tucker County.

Five suits by the Keneweg Company and others against Schilansky & Schatz and others.  Judgments for plaintiffs, and M. Schidlovsky and others appeal.

*Modified.*

A. G. DAYTON, F. O. BLUE, C. O. STRIEBY, and C. WOOD DAILEY, for appellants.

CUNNINGHAM & STALLINGS, E. D. TALBOTT, and A. J. VALENTINE, for appellees.

DENT, PRESIDENT:

M. Schidlovsky and others appeal from a decree render-ed in favor of the Kenneweg Company and others against Schilansky & Schatz *et al.* on the 18th day of June, 1898, by the circuit court of Tucker County, in five certain suits therein pending to set aside certain fraudulent transfers and conveyances of property by said Schilansky & Schatz, and subject it to the payment of their debs. Numerous errors are assigned, some of which are purely technical, and some reach the merits. Attachments were sued out and levied on three certain stocks of goods sold the same day by said firm to M. Schidlovsky, D. Levy, and Frank Schulberg, respectively. The goods, because of their per-ishable character, were sold under an order of the court. The attachments were then quashed for insufficiency of the affidavits, and the proceeds of the sale were ordered paid to said purchasers. Before this was done the plain-tiffs filed an amended bill, and the court restrained the payment of these funds as formerly directed until further order. The funds so held were on a final hearing directed to be paid to the creditors attacking the sales as fraudu-lent. The attachments were quashed and the restraining order was issued during the same term, while the matter was still in the breast of the court. Hence the former or-der, which was in effect set aside and suspended by the latter, cannot be held to be *res judicata* as to the latter. No such plea was made, although it appears to be seriously insisted upon in argument. *Res judicata* must be pleaded in equity. The bills are in no sense multifarious, as they have but one object, and that is to subject the property of Schilansky & Schatz to the payment of their debts. Mary Geisberger having filed her affidavit and petition to that end, the appeal must be dismissed as to her. A commis-sioner has the right to give his reasons for his holdings, without being subjected to the criticism of arguing the case. So far as the conveyances to Schidlovsky, Levy, and Schulberg are concerned, the facts and circumstances can-not possibly be held to preponderate against the holding of the court. Even though they paid full value for the goods, it is plainly evident they were endeavoring to aid the firm of Schilansky & Schatz to perpetrate a fraud upon their

creditors; otherwise, they would have made some effort to have the purchase money applied upon their debts, and not have aided them to place the same beyond the reach of creditors. There was enough at least in the manner and mode of those sales to have raised an honest dealer's suspicion, and put him on inquiry which was sufficient. They operated to delay, hinder, and defraud creditors. *Frank* v. *Zeigler*, (W. Va.) (33 S. E. 761;) *Dent* v. *Pickens, Id.* 303; *Farley* v. *Bateman*, 40 W. Va. 540, (22 S. E. 72).

The real questions of merit which require consideration are those raised by exceptions to the commissioner's report, as follows, to wit: M. Schidlovsky excepts because the commissioner holds that the deed of trust securing his debt was made at a time when Schilansky & Schatz were insolvent. William Rosendorf excepts for the same reason as to one of his debts. The deed of trust securing the latter was dated the 22d day of June, 1895, and recorded the 1st day of July, 1895. The deed of trust securing the former was dated the 1st day of July, 1895, and recorded the 6th day of July, 1895. On the 5th day of July, 1895, the three stores were sold by said firm, which undoubtedly rendered them insolvent, as their real estate was already subject to other liens. If not insolvent, they should have preferred all their creditors, and not a select few. A man who is solvent can pay his creditors, and need not prefer any. The conduct of Schilansky & Schatz the latter part of June and the first of July, when they began to fix their property and prefer their favorites, is proof positive that they were in failing circumstances, and were scuttling an already sinking ship, at the same time they were transferring the cargo in order to make friends with the mammon of unrighteousness. The man who cannot pay his debts is insolvent. *Weigand* v. *Supply Co.*, 44 W. Va. 133, (28 S. E. 803); *Wolf* v. *McGugin*, 37 W. Va. 552, (16 S. E. 797). The commissioner finds that the insolvency of Schilansky & Schatz as a firm and individually occurred the latter part of June, 1895, as a result of the numerous sales and conveyances of their property about that time consummated. This Court is unable to say from the pleadings and proofs that such finding is wrong. *Stewart* v. *Stewart*, 40 W Va. 65, (20 S. E. 862); *Chapman*

v. *Railroad Co.*, 18 W. Va. 185. William Rosendorf also excepts to the commissioner's report for the reason that his two thousand dollar debt is postponed to fourth in priority on lot No. 15 in Davis, West Virginia, instead of second. His deed of trust was held to be fraudulent by the decree of the court entered the 11th of December, 1897. This deed was executed the 5th day of February, 1895, and admitted to record the 11th of February, 1895. The commissioner reports that four months at least after this time Schilansky & Schatz were solvent. There is no evidence showing, or even tending to show that at the time of the execution of this deed Schlansky or Schatz, or either of them, had any intent whatever to defraud their creditors. And, while the court finds fraudulent intent to exist as to this deed, it is not able to do so as to the two deeds executed four months later. The deed of the 5th of February has not been shown to be fraudulent in its inception, and there is no sufficient evidence to show that it has been paid off or satisfied. The charge of fraud as to it is wholly unsustained. The charge of fraud as to the trust lien of the Southern Building & Loan Association on the same lot, to wit, No. 15, was abandoned. Hence the court was not justified in postponing the trust debt of William Rosendorf to the debts of the Keneweg Company and the Baer Sons Grocery Company, but said debt of William Rosendorf should have been decreed second in priority on this lot No. 15. The after admissions or declarations of Schilansky & Schatz in their pleadings or otherwise cannot affect prior innocent purchasers. If such was the case, no man's title would be safe.

Daniel Rosendorf excepts to the commissioner's report because he holds that the thirty shares of stock of Schilansky & Schatz are liable to the payment of the debts of the creditors assaulting them. He insists that there is neither allegation nor evidence of assault on these thirty shares of stock. The bills of both the Keneweg Company and the Baer Sons Grocery Company have the following prayer, which in effect is common to both, to wit: "That the deed of trust executed on the 6th day of July, 1895, by the Middle Mountain Boom and Lumber Company to C. O. Strieby, trustee, to secure themselves, be declared fraudu-

lent and void, and that the same be set aside as fraudulent, and whatever interest the said Schilansky & Schatz had in said corporation be decreed to plaintiff in the payment of its debt." The deed of trust referred to is one executed by the president and secretary of the company, William Rosendorf and Daniel Rosendorf, for moneys to the amount of ten thousand dollars advanced by themselves on the property of the Middle Mountain Boom and Lumber Company, in which they are themselves the principal stockholders. As to creditors and other stockholders such a deed on its face is void, and does not even amount to an incumbrance on the property of the Middle Mountain Boom and Lumber Company. But what right had the Keneweg Company and the Baer Sons Grocery Company to assail it in this suit? This is not a suit in which to settle the affairs of the Middle Mountain Boom and Lumber Company, but the affairs of Schilansky & Schatz. It turns out that they have thirty shares of stock in such company which are claimed by assignment by Daniel Rosendorf. Such assignment has as yet been assailed by no one, and such shares of stock have never been properly brought before the court. *Shoe Co.* v. *Haught*, 41 W. Va. 275, (23 S. E. 553). They have not been attached, nor is there anything to give the court jurisdiction of them. The only excuse given why the court has any control is the attack on the void deed aforesaid. Such an attack renders the bills to this extent quasi multifarious, for the affairs of this Mountain Boom and Lumber Company cannot be settled in this case; and, although the court sets aside said deed of trust, it does not undertake to make such settlement, but decrees such stock for sale, although not justified in so doing by the allegations. This stock should be dismissed from this case as not assaulted.

Rosendorf & Co. except to the commissioner's report because he finds that Schilansky & Schatz own a one-seventh interest in what are known as the "Harper Lands." Schilansky is forced by the court on application of the commissioner, to produce the following contract in relation to this land: "This memorandum of agreement made and entered into this 10th day of June, 1895, by and between Wm. Rosendorf and Daniel Rosendorf, partners trading un-

der the firm name and style of Rosendorf & Co., of the city of New York, of the first part, and B. Schilansky and G. Schatz, of the town of Thomas, West Virginia, witnesseth, that whereas the parties of the second part became purchasers of a one-seventh interest of the real estate sold to the firm of Rosendorf and Company at a special commissioner's sale on the 12th day of June, 1893, at the front door of the court house of Tucker County, West Virginia, in the chancery cause of E. Harper, Adm'r, against Thaddeus Harper and others, and failing to pay their part and *pro rata* share of the purchase money therefor, but did pay the sum of two thousand one hundred and twelve dollars and twenty cents thereon : Now, therefore, it is expressly agreed and understood that the deed for all the said land shall be made by the commissioners therein to the parties of the first part; that the sum of two thousand one hundred and twelve dollars and twenty cents so paid by the parties of the second part to the commissioner shall be applied by the parties of the first part as a credit on an individual indebtedness for merchandise and borrowed money, &c., of the parties of the second part to the parties of the first part; that the parties of the first part shall pay to the said commissioner the balance due on the purchase money of the said real estate; that the legal title therefor shall remain in the parties of the first part, and they shall hold the same as long as they may elect to hold the same, and cannot be forced to sale or sold by the parties of the second part, or controlled in any way, save and except by the consent of the parties of the first part; that after every tract of the same has been disposed of by the parties of the first part, and the money therefor collected, and after all costs, expenses, damages, losses, interest at the rate of six per cent. be allowed on the money invested by the parties of the first part, all taxes paid, and all expenditures provided, of whatever nature, subject to agreement dated February, 1895, then the parties of the second part shall be entitled to a one-seventh share of the net profits. Witness our hands this day and year aforesaid. Rosendorf & Co. B. Schilansky." George Schatz did not sign this agreement, but on the 22d day of June, 1895, in furtherance thereof, he executed a deed for his interest in said

land to William and Daniel Rosendorf, which deed is attacked as fraudulent. Also, a decree of the circuit court dated the —— day of June, 1895, directing a conveyance of the land to the Rosendorfs, as the real purchasers thereof, is attacked as fraudulent. At the date of the agreement Schilansky & Schatz were solvent, according to the commissioner's report. Such being the case, they had the right to make the arrangement that the Rosendorfs should take the land and apply such moneys as they had paid on their indebtedness to them, without being in fraud of any of their creditors. If they had been insolvent such an arrangement would have been held to be an unlawful preference, and would have inured to the benefit of all their creditors. The reasoning of the commissioner on the subject of this agreement appears to be without force. He claims the fact that they reserved the right to one-seventh of the profits, when the land should be sold after all expenses were paid, showed they still owned the one-seventh of the land. This does not follow, for while Schilansky & Schatz felt compelled to give up their interest, because of inability to pay the purchase money, yet they determined not to lose the benefit of what they considered a good bargain, and therefore they retained a right to their proportionate share of their prospective profits. This does not make this contract either fraudulent, remarkable, or void. And because an ejectment suit was pending in that court, brought in the name of all the original purchasers, as probably shown by the decree of confirmation of the sale prior to the agreement that Schilansky & Schatz were to release their interest, and the deed was to be made to the Rosendorfs alone, is no evidence of fraud. The commissioner's report is apparently without any foundation to sustain it, for, after finding from this contract that Schilansky & Schatz have the equitable title to one-seventh of the Harper lands, he adds, "I further report that Schilansky & Schatz were solvent at the time they conveyed or pretended to convey their interest in the above-mentioned lands to Rosendorfs." If solvent, why is the contract fraudulent? The real reason which seems to govern the commissioner is because "the said Schilansky & Schatz have wholly failed to deny the allegations set forth in the bills of the plain-

tiffs, assaulting the same by proper answers to said bills."
This is a mistaken idea of the law. Neither the admissions nor confessions of a grantor can be received against a grantee to disparage the grantee's title. *Harden* v. *Wagner*, 22 W. Va. 356; *Casto & Fry*, 33 W. Va. 449, (10 S. E. 799); *Crothers' Adm'r* v. *Crothers* 40 W. Va. 169, (20 S. E. 927). An insolvent person loses all interest in his former property and creditors. He probably cares not which wins or loses, and sometimes he sympathizes more with the attacking creditor than with his former grantee. The very fact that he does not answer, denying fraudulent charges, tends to show a want of conspiracy or understanding between him and his grantee. If such understanding and conspiracy existed, they would carry it through to the end of the litigation. "The *onus pro bandi* is on him who alleges fraud, and, if the fraud is not strictly and clearly proved as it is alleged, relief cannot be granted although the party against whom relief is sought may not have been perfectly clear in his dealings." *Harden* v. *Wagner*, cited. It requires more than mere suspicion to establish fraud. Much of this case has apparently been decided on suspicion,—justifiable, no doubt, but not amounting to that degree of proof which the law demands.

The decree is reversed and amended in so far as it postpones the trust deed of William Rosendorf to the debts of the Kenewig Company and the Baer Sons Grocery Company on lot No. 15, decreed to be sold, and in so far as it subjects the thirty shares of stock of Schilansky & Schatz in the Middle Mountain Boom and Lumber Company to the payment of the creditors who attacked the deed of trust executed by said company to secure its secretary and treasurer in the sum of ten thousand dollars, and in so far as it holds that Schilansky & Schatz own a one-seventh interest in the Harper lands and decrees the same for sale; and in lieu thereof it is adjudged, ordered, and decreed that the debt of William Rosendorf, amounting on the 18th day of June, 1898, the date of the decree of sale, to the sum of two thousand three hundred and seventy dollars, with interest from the 5th day of March, 1898, is a lien second in priority on lot No. 15, and that the thirty shares of stock of Schilansky & Schatz in the Middle Mountain Boom and

Lumber Company be dismissed from this suit, as no cred-itor has yet obtained the right in any manner to subject the same to the payment of his debt, and that the one-seventh interest of Schilansky & Schatz in the prospective net profits in the Harper lands be sold subject to the pro-visions of the written agreement bearing date the 10th day of June, 1895, and in all other respects the decree is af-firmed, with costs to the appellants, to be paid out of the personal funds now in the hands of George A. Mayer, deputy for Will E. Cupp, late sheriff of Tucker County, and which fund was directed to be distributed *pro rata* upon the debts of the Keneweg Company, A. F. and J. W. Horner, the Baer Sons Grocery Company, Baker & Gins-burg, and Witz, Bean & Co.; and the cause is remanded to be further proceeded in according to the rules and princi-ples governing courts of equity.

*Modified.*