## MARKWELL vs. THORN and others.

DEVISE OF REAL ESTATE. (1–2) *Probate of foreign will — Effect upon title to real property in this state — Effect of annuity charge, and contingent forfeiture.*

VENDOR AND PURCHASER. (3–4) *Sale of land by devisee, subjected by the will to annuity charge and contingent forfeiture, and by law to testator's debts. Evidence and burden of proof as to discharge of incumbrances.*

IDENTITY OF GRANTOR. (5) *Evidence of identity. Estoppel.*

1. Where a duly authenticated copy of a will admitted to probate by the proper court of another state (in which the testator resided at the time of his death), and a certificate of the probate of such will from said court, were presented by the executors to the probate court of a

county in this state where lands of the deceased were situate, and due notice of the hearing was given as in the case of an original will offered for probate, and said copy was duly recorded in said county court, and the instrument allowed by the court by an order or judgment in due form, properly made and recorded: *Held*, that these proceedings were a substantial compliance with the statute (R. S., ch. 97, secs. 22–24), and gave to the will the same effect as if it had been originally admitted to probate in said county court.

2  Said will devised the testator's real property in this state to defendants, subject to the payment by them to one Ann E. Thorn of an annuity, which was made a charge upon the property; and it declared that if default were made in the payment of such annuity for three months after any payment should become due, defendant's title to such real estate should cease and become forfeited, and should become vested in said Ann E. Thorn absolutely in fee. *Held*,

(1.) That upon the allowance of the will in said county court, the title to said real estate passed to defendants, subject to said annuity charge, and also subject to be divested in certain contingencies, to pay debts of the testator, or the expenses of administration.

(2.) That the issuing of letters testamentary, or of administration, in this state, was not a condition precedent to making the will effectual to pass the title to the land; and the failure to issue such letters did not divest the title so passed.

3.  Defendants having contracted to sell the land to plaintiff, and convey it to him by a certain day free of incumbrance, or pay a certain sum as stipulated damages, in an action for such damages, where the defense was that they offered to convey on the day named, they were bound to show that the incumbrance of said annuity charge, and the contingent liability for the expenses of administration, had been removed before that day.

4.  Evidence that, before the day named, the annuitant had released to defendants her interest in the land, was admissible to show that the incumbrance of such annuity charge had been removed.

5.  A deed of release from Ann E. Lake, introduced by defendant, was ruled out on the ground that there was no proof of the identy of said annuitant and said grantor. Defendant then offered to prove by a witness that at the time the contract was executed, plaintiff was informed of the marriage of Ann E. Thorn to one Lake, and that a release from said Ann E. Lake would be necessary; and that said deed of release was shown plaintiff when defendant offered to convey to him the land pursuant to the contract; and that plaintiff had never raised any question as to the identity of said Ann E. Thorn and Ann E. Lake, before the trial. *Held*, that it was error to reject the evidence.

6. It was error to reject evidence offered by defendants to show that, before the day named, the estate of their testator had been fully settled in the state and county of his residence, and the *expenses of administration* paid.

7. There is no legal presumption that a decedent was indebted at the time of his death; and the burden of proof as to the existence of such debts in this case was upon *the plaintiff*.

8. Though a purchaser of land is not bound to take a *doubtful* title, he can not object to the title merely because there is a *possibility* of its being encumbered.

9. Even if defendants were required to show in the first instance that the land was not encumbered by debts of their intestate, proof that the will was probated and the estate fully administered upon in the county of his residence would be sufficient *prima facie* proof that there were no debts remaining, and would change the burden of proof to the person asserting the existence of such debts.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendants appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Francis Bloodgood*, for appellants, argued, 1. That the executors had no lien upon the premises in question, under the statute which allowed them to take possession until the debts were paid. (1.) Because the statute is merely permissive and the right lapses if not asserted. (2.) Because there was not only no proof that the executors here had ever asserted such right, but defendants offered to prove that they had relinquished it, and that the debts of the estate were all paid. R. S., ch. 100, sec. 7; *Philips v. Gray*, 1 Ala., 226; *Terry v. Ferguson, Adm'r*, 8 Porter (Ala.), 502; *Masterson v. Girard's Heirs*, 10 Ala., 60; *Martin v. Williams*, 18 id., 193; *Hubbard v. Ricart*, 3 Vt., 207; *Abbott v. Pratt*, 16 id., 626; 13 id., 258, 597; *Roberts v. Morgan*, 30 id., 319; 7 Mich., 350. 2. That there was no incumbrances upon the land here in question, under the statute which charges the real estate of a decedent with the payment of his debts. (1.) There is no presumption of law that such lien exists. (2.) Plaintiff offered no proof of the existence of any debt upon which such a lien could be based; and defend-

ants offered proof that no such debt existed. 3. That the court erred in rejecting the deed of release by the annuitant. (1.) The laws of New York (which were in evidence) provide that no acknowledgment shall be taken unless the officer shall know, or have satisfactory evidence, that the person making the acknowledgment is the individual *described in*, and who executed, the conveyance. The notary who took the acknowledgment of this deed certifies that the same was acknowledged according to the laws of the state of New York, and that he personally *knew* the said Ann Elizabeth Lake, i. e., the Ann Elizabeth described in the deed· as " wife of John W. Lake; neice of Samuel S. Thorn, late of Utica, deceased, described in the will of said deceased as Ann Elizabeth Thorn, she being unmarried at the time." (2.) The description in the instrument itself was sufficient. Where a person whose name and description correspond with those of a person previously named in the· title, deals with the property in a manner consistent with the supposition of the two being identical, such identity, in the absence of any reasonable ground for a suspicion, must be presumed. (3.) Where a title passes through heirs, and the existence of the heirs *is proved*, parties executing conveyances, who describe themselves therein as heirs, and set out the source through which they claim, are presumed to be such, in the absence of any suspicion, &c., even though, in consequence of claiming through the female line, their names be different from that of the ancestor frcm whom the title comes. (4.) If any cumulative evidence as to identity was necessary, that offered by defendants was complete. To these points counsel cited Dart on Vendors, 166, 167, 179; 2 Phillipps' Ev. (4th Am. ed.), 505, 507 *et seq.*

*Waldo & Van Valkenburgh*, for respondent:

It is not enough that the deed tendered be sufficient in form and in mode of execution. It must be a deed made in such manner and by such parties that, if accepted, it would convey a good title, in fee, and free from incumbrance. *Young vs.*

*Wright*, 4 Wis., 144; *Same Case*, 6 id., 127; *Bateman v. Johnson*, 10 Wis., 1; *Taft v. Kessel*, 16 id., 273; Rawle on Cov., 562–3. To create an incumbrance, it is not essential that there be in the incumbrancer an established right, or one presently to be enforced. It is enough to justify a refusal to take the title, if there be a possibility that future proceedings may produce a lien or claim on the estate. Even an inchoate right of dower is enough. Rawle on Cov., 122, 123, and notes; *Shearer v. Ranger*, 22 Pick., 447; *Wright v. Young*, 6 Wis., 127. The grantors should have produced and tendered, with the deed, evidence of title, and that no incumbrance existed. *Davis v. Henderson*, 17 Wis., 105. If the vendors could not convey good title, free from incumbrance, as agreed, the purchaser was not bound to accept even a warranty deed (*Falkner v. Guild*, 10 Wis., 563; *Davidson v. Van Pelt*, 15 id., 341), and the purchaser may recover moneys already paid. 16 Wis., 273. An incumbrance is well defined to be " every right to or interest in the land to the diminution of the value of the land, but consistent with the passing of the fee by conveyance." *Prescott v. Trueman*, 4 Mass., 627. Defendants' title was not free from incumbrance. (1) The will had never been so proved and allowed and recorded in this state as to make it effectual to pass the title. The only legal evidence of such allowance would be the *filing* and *recording* of a copy, both of the will and of "the probate thereof," duly authenticated. R. S., ch. 97, §§ 21–24, 39. The pretended record in the probate office of Milwaukee county is insufficient, because it purports merely to show a copy of the will itself, and not of the certificates of authentication from Oneida county, New York. The pretended record in the office of the register of deeds is insufficient, because that purports to be merely a copy of the authenticated copy of the will sent from Oneida county, taken before its admission to probate in Wisconsin, and having, therefore, no order attached allowing the instrument as a will in this state. R. S., ch. 97, sec. 39. (2) The acts of the probate court can only be proved by the

record. A paper in the form of an order admitting a will to probate, but neither filed nor recorded, proves nothing. (3) If the will had been duly allowed, filed and recorded, it was necessary that letters testamentary, or of administration with the will annexed, should issue; the property was subject (both by the statute and by the terms of the will) to the payment of debts of the estate, and of the expenses of administration; it was the right of the administrator to hold possession and receive the rents until the property was freed from liability to pay such debts and expenses by the order of the county court, and no such order has ever been made, the estate has not been settled, and the property has never been delivered over to the devisees by the order of the court. R. S., ch. 97, secs. 25, 30, 33, 34; ch. 100, sec. 1; ch. 101, sec. 40. The estate, then, was incumbered by the right of temporary possession by the administrator with the will annexed, by the amount of expense of administration, and by a liability to be held and sold for whatever debts may turn up in this state, when creditors are called upon to prove their claims. *Williams v. Sleusher*, 4 Chand., 155; *Edwards v. Evans*, 16 Wis., 181.

Lyon, J. In February, 1865, one Samuel S. Thorn, a resident of Oneida county, in the state of New York, and an uncle of the defendants, died testate. At the time of his death he was seized in fee of lot 16 in block 42, in the second ward of the city of Milwaukee. By his last will and testament, which was duly proved, admitted to probate, and recorded, in April, 1865, in the surrogate's court of said county of Oneida, he devised said lot 16 to the defendants, but subject to the payment by them to one Elizabeth Thorn of an annuity of $86, which was made a charge upon the lot. Indeed, the will provided that if default should be made in the payment of such annuity for three months after any payment should become due on account thereof, the right and title of the defendants in and to such lot should cease and become forfeited, and the same should thereupon become vested in the said Elizabeth, absolutely in fee.

In October of the same year, the executors of said will presented to the county court of the county of Milwaukee, a copy of said will, duly authenticated, and a certificate of the probate thereof endorsed thereon, from the surrogate's court of Oneida county, and prayed to have the same allowed in this state as the last will and testament of the deceased. Due notice was given of the time and place appointed for the hearing, as required by law, and, at the time appointed, the Milwaukee county court made an order, reciting therein the regularity of the proceedings upon which the same was founded, and allowing such instrument as the last will and testament of the deceased in this state. The order also directed that "the said copy of said will, and of the probate thereof, be filed and recorded, and that said will have the same force and effect as if if had been originally proved and allowed in this court." This order was made November 13th, 1865, and was recorded, together with the copy of such will, probably immediately thereafter. The record does not show the precise date of such recording. The certificate of authentication, and of the probate of the will, from the surrogate's court, endorsed on such copy of the will, was never recorded in the Milwaukee county court. No further proceedings in respect to said will, or the settlement of said estate, were ever taken in the Milwaukee county court. In December, 1865, the attorney for the executors, by leave of the court, took such copy of the will from the files of the county court, and although at the time of the trial of this action it appeared that the same had been returned to such files, yet it was not there in May, 1868, when the abstract of title was made.

The deceased left surviving him a widow, Anna M. Thorn, who died November 6th, 1867.

On the 30th day of April, 1868, an agreement in writing, un der seal, was entered into by the parties to this action, in and by which the defendants agreed to sell to the plaintiff said lot 16 for the sum of $12,000, and to execute and deliver to him within thirty days thereafter, a good and sufficient warranty deed

of the premises, free and clear of all incumbrances, except a certain lease therein described. The plaintiff paid $250 at the time of executing the agreement, and covenanted to pay the defendants, on the delivery of such deed, the further sum of $4,750, and to execute and deliver to them at the same time his notes, and a mortgage upon the lot conveyed to him to se-cure such notes, payable at the times mentioned in the agreement for the balance of such purchase money and the interest accruing thereon. It was further therein covenanted, that should the defendants fail to tender such deed to the plaintiff, duly executed, within the thirty days, they should forfeit $250. This sum was evidently intended by the parties to be the liquidated damages in case of a breach of their covenants by the defendants. It was also covenanted in such agreement, by the plaintiff, that should he fail to pay the said sum of $4,750, and to execute his notes and mortgage for the unpaid purchase money, immediately upon a delivery or tender of such deed, he shall forfeit as liquidated damages the $250 which he paid when he executed the agreement.

On the 30th day of May, 1868, the defendants tendered to the plaintiff a deed of said lot 16, duly executed to him by the defendants and their wives. No objection is made to the form or mode of execution of such deed. Upon such tender the defendants demanded of the plaintiff the money, notes and mortgage which he so agreed to pay and deliver to the defendants, on the tender to him of such deed.

The plaintiff refused to accept the deed, or pay the money, or execute such notes and mortgage, because, as he alleged, the deed tendered was insufficient to convey to him the title to the lot, free and clear of all incumbrances, as he was advised by his counsel; but at the same time he offered to accept the deed and fulfil the agreement on his part if the defendants would have letters of administration taken out in this state, and clear the lot from all claim of the executors of the last will and testament of the deceased, and from liability for his debts.

This action was brought by the plaintiff to recover the $250 which he paid when the agreement was executed, and also the further sum of $250, as the damages which the defendants stipulated to pay in case they failed to perform their covenants.

The complaint sets out the agreement, and the payment of $250 thereon; avers that the plaintiff is, and at all times has been, ready and willing to perform his covenants therein contained; that he has repeatedly offered to do so, and demanded performance on the part of the defendants; and alleges further, that the defendants " have utterly neglected and refused to perform and fulfil their part of said agreement, and have neglected to convey said real estate to this plaintiff with perfect title in fee simple, or freed from incumbrances."

The complaint does not specify wherein the defendants have violated their covenants, except in this general manner.

The answer denies that the defendants have failed to perform their covenants, and avers a tender of full performance by them within the time limited therefor by the agreement, and charges that the plaintiff has failed and refused to perform the agreement on his part.

It was developed on the trial, although, as we have seen, not specifically alleged in the complaint, that the objections made by the plaintiff to the title of the defendants, are the following:

1. That the will of the testator has never been so proved, allowed and recorded in this state, as to make it effectual to pass the title to the lot, to the defendants.

2. That the annuity payable to Elizabeth Thorn is an incumbrance upon the lot.

3. That the lot is chargeable with the expenses of administration, and the executors may take possession of it at any time.

4. That it is also chargeable with the payment of the debts of the testator, which he owed at the time of his decease.

For the purpose of showing that there were no incumbrances upon the lot when they tendered the deed thereof to the plain-

Markwell vs. Thorn and others.

tiff, the defendants offered testimony tending to prove that the annuitant had before that time released to them her interest therein ;* that within a month after the death of the testator,

* The deed of release offered by defendants in evidence was executed by "Ann Elizabeth Lake." The following extract from the opinion by Mr. Justice COLE, filed at the June term, 1870, sets forth the evidence offered in connection with said deed, and rejected by the court:

COLE, J. We think there must be a new trial on account of the error in excluding the evidence offered on the part of the defendants to identify the Ann Elizabeth Lake who executed the quit-claim deed to them, as the Ann Elizabeth Thorn mentioned in the will of Samuel S. Thorn. The witness Bloodgood was recalled, and it was proposed to show by him that he was employed by both the plaintiff and defendants to draw the contract in question; that the plaintiff and the defendant Samuel S. Thorn, were both present at the time it was drawn, and executed it immediately upon its conclusion; that the fact of the marriage of said Ann Elizabeth Thorn, and the name of her husband John W. Lake, were stated at the time by the said defendant S. S. Thorn; and that it was then and there discussed between the plaintiff and defendant S. S. Thorn, that the release of the said Ann Elizabeth was necessary to enable the defendant to give an unencumbered title to the premises; that the defendant Thorn, in presence of the plaintiff, gave the witness the name of the husband of the said Ann Elizabeth, to enable him to draw the said release, and directed him to draw it and send it on to be executed by said Ann Elizabeth and her husband; that it was there and then understood and arranged between the defendant Thorn and the said plaintiff, that this release was to come back to the witness with the deed from the defendants and their wives, to be delivered to the plaintiff on his fulfilling his part of the contract, and that the plaintiff then raised no question as to the identity of the said Ann Elizabeth; that the plaintiff, when the release was shown him, at the time of the tender of the deed from the defendants to him as before testified to by the witness, raised no question as to the identity of the said Ann Elizabeth; and that the question of her identity had never been raised until the trial. It seems to us that this testimony was competent to go to the jury on the question of identity, and that the jury would have been warranted in finding from it, in connection with the other evidence bearing upon the question, that the Ann Elizabeth Lake who executed the quit-claim deed, was the same person as the annuitant named in the will. And, without deciding the other points discussed by counsel, we reverse the case and send it back for a new trial on account of the error in excluding this testimony.

the executors of his will gave the defendants the possession of the lot as devisees thereof under such will, which posession they have ever since held; and that before the date of the agreement between the parties in respect to such lot, the estate of the deceased testator had been fully settled in the surrogate's court of Oneida county, and all his debts paid.

The proposed testimony was all rejected, and the circuit court held " that the real estate of a decedent in this state, under our statute, is chargeable with the payment of his debts; that his executors or administrators are entitled to the possession thereof until the debts are paid and the estate settled and distributed by the decree of the county court in this state having jurisdiction; and that the only evidence admissible to show that such real estate was discharged from such incumbrance, and that no debt against said decedent existed, is the final decree of said county court, settling and distributing said estate." The circuit judge thereupon directed the jury to return a verdict for the plaintiff for the amount of his claim, to wit, for $500 and interest, which was accordingly done.

A motion for a new trial was overruled, and judgment was duly entered upon the verdict; from which judgment the defendants appealed to this court.

The cause has been twice heard in this court. On the first argument, the court held that the testimony tending to show that the annuitant had released her interest in the lot to the defendants was competent testimony, and should have been received; and because the same was excluded by the circuit court, the judgment was reversed. A rehearing was granted, not because the court doubted the correctness of its decision upon the question considered, but because the decision of that question was not necessarily conclusive of the case. For it is manifest, that if the title to the lot never vested in the defendants, or, having vested in them, if the lot was incumbered otherwise than by the annuity charge, the judgment of the circuit court, notwithstanding such erroneous rejection of testimony, is correct, and should not be disturbed.

The first question to be considered, is : Did the allowance of the will in the Milwaukee county court pass the title of the lot to the defendants, in the absence of further proceedings in that court in respect thereto ?

We think that this question must be answered in the affirmative. The proceedings in the Milwaukee county court, which resulted in the order allowing the will in this state, are a substantial compliance with the requirements of the statute on that subject. R. S., ch. 97, secs. 22, 23 and 24. A copy of the will duly authenticated, and a certificate of the probate thereof from the proper court in Oneida county, were presented to the county court of Milwaukee county, by the executors therein named ; due notice of hearing was given in the same manner as in the case of an original will presented for probate ; the copy of the will was duly recorded in the county court ; and the instrument was allowed by that court by an order or judgment in due form, and properly made and recorded. These proceedings gave to the last will and testament of the testator the same force and effect as though it had been originally proved and allowed in the Milwaukee county court.

Manifestly, the force and effect of the original probate of the will in that court would have been, to pass the title to lot 16 to the defendants, subject of course to the annuity charge before mentioned, and subject also, in certain contingencies, to the debts of the testator, if he owed any at the time of his decease, and to the costs and expenses of administration. If such would have been the effect of the original probate of the will in the county court, then, in like manner, the title passed to the defendants by virtue of the proceedings in that court which resulted in the order or judgment allowing the instrument in this state as the last will and testament of the testator. R. S., ch. 97, sec. 21. The failure to issue letters testamentary or letters of administration in this state does not divest such title ; and the issuing thereof is not a condition precedent to rendering the will thus allowed effectual to pass the title of the lot to the defendants.

We conclude, therefore, that at the time the defendants tendered to the plaintiff a deed of the lot, they were the owners thereof in fee.

But if there was any valid subsisting incumbrance thereon at that time, it is clear that the plaintiff was not bound to accept the deed; and the verdict and judgment in such case should not be disturbed.

We have already seen wherein it is claimed by the plaintiff that the lot was incumbered.

1. The annuity charge was clearly an incumbrance, and the burden of proof was upon the defendants to show that it had been removed. The testimony offered for that purpose by the defendants was rejected by the circuit court. This court held on the first hearing of the case, as already stated, that the proposed testimony ought to have been received, and that it was error to exclude it. We still adhere to that decision, and deem it unnecessary to add anything to what is said by Justice COLE, who wrote the opinion of the court.

2. The lot was or might be chargeable, in case the personal estate of the decedent which came to the hands of the executors was insufficient for that purpose, with the expenses of administration. This was also *prima facie* an incumbrance, and the burden of proof was upon the defendants to show that it never existed, or that it had been removed. They were permitted to show that there was ample personal estate to pay such expenses, but their offer to prove that the estate had been fully settled in the surrogate's court of Oneida county and the debts paid, was rejected, and testimony tending to prove such settlement and payment was ruled out by the circuit court. The burden of proof being upon the defendants to show that such expenses were not an incumbrance upon the lot, they should have been permitted to show that the expenses of administration in Oneida county had been paid. But they were excluded from so doing. This was error.

3. It only remains to consider whether the lot was incum-

bered by reason of any indebtedness of the testator at the time of his death.

The testimony tends to show that the deceased left personal estate of the value of over $15,000, and that the real estate of which he died seized, was worth from $200,000 to $250,000; that a notice was duly published in 1867, pursuant to the statutes of New York, requiring the creditors of the testator to produce their claims by a certain time therein named; and that the only claims presented against the estate of the testator, either pursuant to such notice or otherwise, were a claim of one Henner of some $300, being the balance of a remaining account between himself and the deceased, and another claim for less than $1,000, secured on real estate in Ohio. The latter claim was paid in 1865, and the Henner claim was settled in the fall of 1868.

No testimony was given or offered tending to show that at the time of his death the testator owed one dollar beyond these two trifling debts. The testimony offered by the defendants tending to show that both of these debts, and all of the debts of the testator, if he owed others, were paid before the contract was made by the parties for the purchase and sale of lot 16, was rejected by the circuit court. In thus ruling, the judge was perfectly logical, for, as we have before observed, he held that the only evidence admissible to show that there was no outstanding debt against the decedent, was the final decree of the Milwaukee county court, settling and distributing the estate. He also held expressly, that the burden of proof was upon the defendants to show that the debts of the testator had been paid. There being no such final decree of the county court in existence, it became impossible for the defendants to prove that the debts of the testator had all been paid, and the verdict necessarily was against them.

We think that the learned circuit judge was in error upon both propositions. First, we do not think that there was any presumption, under the circumstances, that there were outstand-

ing and unsatisfied debts which the testator owed at the time of his death. If the real estate, of which the testator died seized, was incumbered by reason of the liability that the same might become charged with the payment of any such debts, the existence of such debts is a fact asserted by the plaintiff, and to be proved by him, the same as he is required to prove any other fact upon the existence of which his right of action depends. There can be no legal presumption that the testator died in debt, and, in the absence of such presumption, the burden of proof is necessarily upon the plaintiff, who asserts the fact, to prove it. *Wilsey v. Dennis*, 44 Barb., 354 (362); *Walker v. Town*, 23 Ark., 147; *Bolton v.Branch*, 22 id., 435; *Camfield v. Gilbert*, 4 Esp., 221.

Again, were the burden of proof upon the defendants to show that there were no outstanding debts against the estate, we think the court below erred in holding that the only competent evidence of the fact was the final decree of the Milwaukee county court settling and distributing the estate.

Such decree would doubtless demonstrate to an absolute certainty that no creditor of the estate could assert thereafter any claim upon the lot. But this is higher proof than the defendants are bound to make. The plaintiff, it is true, is not bound to take a *doubtful* title; but he is not permitted to object to the title merely because there is a *possibility* that it may be incumbered. Hence the defendants cannot be required to show a clear title by evidence which excludes the possibility of an incumbrance. 1 Sugden on Vendors, 352; *Ten Broeck v. Livingston*, 1 John. Ch., 357.

It seems to us, therefore, that although the defendants might be required in the first instance to prove that the lot was not incumbered by debts, evidence that the will was probated and the estate fully administered upon in the county where the testator lived at the time of his death, would be sufficient *prima facie* to show that there were no debts remaining; and would change the burden of proof to the plaintiff, if he still asserted

that the lot was so incumbered. In this view of the case, the testimony offered by the defendants to show such full administration and payment of all claims against the estate should have been received.

The correctness of these views is rendered the more apparent by reference to the provisions of ch. 165, Laws of 1867, which dispenses with the necessity of any further proceedings in a probate court in this state, after a foreign will has been allowed therein, where it shall appear to the satisfaction of the court, by affidavit *or otherwise*, that there are no debts due from the deceased testator or his estate, to parties residing in this state.

For these reasons the court is still of the opinion that there must be a new trial.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.