# CHARLESTON

WOOFTER *et als* v. MATZ *et als.*

Submitted January 31, 1912.   Decided October 8, 1912

WILLS—*Probate—Foreign Probate—Setting Aside.*
    In this state equity has no general jurisdiction, nor juris-
    diction given by statute, to set aside a will and the probate
    thereof, for alleged fraud in the procurement thereof, of one
    domiciled in another state, duly probated there, and subse-
    quently duly admitted to probate in this state on an exemplified
    copy of the record and judgment of probate in the foreign
    state, according to the act of Congress, as a will of real and
    personal estate, as provided in section 25, chapter 77, Code
    1906, the relief against such will being such as the law of the
    domicile provides, and that prescribed by said section.
        71 W. Va.

(ROBINSON, JUDGE, absent.)

Appeal from Circuit Court, Upshur County.

Suit in equity by George Woofter and others against L. E. Matz and others. From a decree for plaintiffs, defendants appeal.

*Reversed, and Bill Dismissed.*

*Davis & Davis* and *Harvey W. Harmer,* for appellants.

*W. W. Brannon* and *H. N. Ogden,* for appellees.

MILLER, JUDGE:

The conclusion we have reached on one of the numerous questions argued and presented, in the elaborate briefs of counsel, is comprehensive of all and the only question fairly arising on the record.

That question is, Has a court of equity in this State general jurisdiction, or jurisdiction given by statute, to set aside a will and the probate thereof, for alleged fraud in the procurement thereof, of one domiciled in another state, duly probated there, and subsequently duly admitted to probate in this State on an exemplified copy of the record and judgment of the court of probate in the foreign state, according to the Act of Congress, as a will of real and personal estate, as provided by section 25, chapter 77, Code 1906?

By the decree appealed from the court below answered in the affirmative. In so doing we think it erred, and that its decree must be reversed, and the bill dismissed, but without prejudice to appellees as to any other rights they may have, given by the laws of Ohio, or this State, in respect to the will in question.

The will involved is that of Louisa Armstrong, known also as Louisa Butcher, who at the date of the will and at the time of her death and for many years prior, was domiciled in the state of Ohio, and the facts respecting the same are as assumed in the question propounded.

It is conceded that the will, if valid, disposes of real and personal estate in Taylor county, where the ancillary probate was had. And the jurisdiction of the probate court of Ohio pronouncing the judgment of probate there is not seriously questioned.

The common and statute law, universally recognized, is that the law of the domicile controls the disposition and administration of personal estate, and that as to real estate the *lex loci rei sitae* governs. We need not, therefore, waste time or space in referring to the many text books and judicial decisions cited for this proposition.

We first determine that no statute of this state gives jurisdiction in equity assumed by the court below. Section 25, of chapter 77, Code 1906, our statute of wills, provides; "Where a will relative to estate within this State has been proved without the same, an authenticated copy and the certificate of probate thereof, may be offered for probate in this State. When such copy is so offered, the court to which, or the clerk to whom, it is offered, shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personalty in the State or country of the testator's domicile, and shall admit such copy to probate as a will of personalty in this State; and if it appear from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of land in this State by the law thereof, such copy may be admitted to probate as a will of real estate. But any person interested, may, within five years from the time such authenticated copy is admitted to record, upon reasonable notice to the parties interested, have the order admitting the same set aside, upon due and satisfactory proof that such authenticated copy was not a true copy of such will, or that the probate of such will has been set aside by the court by which it was admitted to probate, or that such probate was improperly made."

This is the whole statute relating to ancillary probate and contest of foreign wills. No jurisdiction in terms is here given a court of equity to annul a foreign will or the ancillary probate thereof in this State. Nor is notice to interested parties of the offer to probate required. The judgment of probate of the County Court of Taylor County, on the exemplified record from Ohio was that "it appearing from said copy that the said will was proved in said Probate Court of Monroe County, Ohio, to have been so executed as to be a valid will of land in this state by the law thereof and there being no objection now made thereto,

it is ordered that said will be admitted to probate as a valid will of both personal and real estate in this state." The presumption, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as "a will of personalty in the State or country of the testator's domicile" given by this statute, and justifying its probate, does not open the question of the due execution of the will by the testator, nor for an issue of *devisavit vel non.* The relief given by the statute to any one interested, is within five years, on reasonable notice to others interested to have the order of probate set aside upon one or all of the three grounds mentioned, namely, (1) that the authenticated copy is not a true copy of the will; (2) that the probate of such will has been set aside by the court admitting it to probate, or, (3) that such probate was improperly made. We think this remedy exclusive of all others. The history of the legislation on this subject fortifies this conclusion. The final clause of section 16, chapter 104, Rev. Code 1819, otherwise practically the same as our section 25, chapter 77, was: "But such will shall be liable to be contested and controverted, in the same manner, as the original might have been." In 1849 this provision was omitted. Section 26, chapter 122, Code 1849. Section 26, chapter 122, Code 1860, section 26, chapter 118, Code Va. 1873, and section 2536, chapter 112, Anno. Code Va. 1904, are wanting in this provision or any provision of like character. Mr. Minor says of this latest Virginia statute, 2 Minor, (4th Ed.) 1040: "The basis of the statute is the principle of universal public law that in the case of personal property the *lex domicilii* governs the will, while in the case of real property *lex loci rei sitae* governs." Our chapter 77, Code 1868, made no special provision concerning foreign wills of real estate; but section 5 of that chapter validated a will of one domiciled out of this State, as to personal property, making no special provision as to the mode or manner of its probate, except by inference in section 30, the last section of the chapter, leaving the legal effect otherwise as to real or personal estate to be controlled by the common law. *Ex parte Povall,* 3 Leigh 816. Our present section 25, of chapter 77, was not brought into the Code until the amendment and re-enactment of that chapter in 1882, by chapter 84, Acts of that year. There had been no

special provision for impeaching a foreign will or the probate thereof given by any previous statute, unless comprehended in section 28, chapter 77, Code 1868, giving any person aggrieved by any order or sentence of the circuit court, right of impeachment by bill of equity, which we think doubtful. The last clause of said section 25, as we see, gives five years within which, on the grounds prescribed, to set aside the probate of a foreign will in this State, not the will itself.

In the case of a domestic will, probated under sections 26-28 of said chapter 77, section 29 gives to any person aggrieved right of appeal and to contest the will on an issue *devisavit vel non* in the circuit court. It is not pretended that the present suit is a proceeding under that section, if applicable to foreign wills; but it is insisted by appellees, contrary to the contention of appellants, that sections 31 and 32 of said chapter are applicable and give equity jurisdiction of the present bill, justifying the decree appealed from. Those sections are as follows: "31. Every such order or sentence of a county court not appealed from, and every such order or sentence of a circuit court on such appeal, shall be a bar to a bill in equity to impeach or establish such will, unless on such a ground as would give to a court of equity jurisdiction over other judgments at law." "32. After sentence or order made as aforesaid, a person interested, who was not a party to the proceeding, may, within five years proceed by bill in equity to impeach or establish the will, on which bill, if required by either party, a trial by a jury shall be ordered, to ascertain whether any, and if any, how much, of what was so offered for probate, be the will of the decedent. If no such bill be filed within that time, the sentence or order shall be forever binding."

A comprehensive view of the preceding sections, including section 25, we think, clearly indicates that the legislature never intended sections 31 and 32 to apply to foreign wills probated here, else why the remedy given by that section against the probate of the will. Without probate here a foreign will is ineffective to pass title, certainly to real estate. *Thrasher* v. *Ballard*, 33 W. Va. 285. Section 25 is *sui generis*. It contemplates a prior judgment in the jurisdiction of the domicile, a judgment in rem, which would involve the question of the val-

idity of the will and bind all parties until set aside by some
court having jurisdiction. The section implies that any con-
test of such foreign will shall be had in the court or juris-
diction of original probate, for one of the grounds of setting
aside the probate in this State is that the will was set aside by
the court by which it was admitted to probate. Moreover, the
judgment of probate of said will in this State remains in full
effect, and by force of the statute becomes a valid will of real
as well as personal estate, until set aside in some way author-
ized by law. The judgment of probate in Ohio has become
merged in the judgment in this State,' and is as binding until
set aside lawfully as if the original judgment of probate had
been entered here. The judgment of probate here makes the
will a valid will of real and personal estate, because the statute
admits it to probate for that purpose. The will is good here
as a will of real estate and personalty, not alone because of its
probate in Ohio, but because of its probate here and by force
of our statute making it so. Thus the law of this State, the
*lex loci rei sitae,* is made to control the disposition of the real
as well as personal estate. We see no necessity, therefore, for
further allusion to the elaborate arguments and the many de-
cisions cited for the proposition that the probate in Ohio has
no extra territorial effect, not given by the *lex loci rei sitae.*

Many cases are cited by counsel involving contests by bill
in equity of wills originally probated in this State; but we are
cited to no case, and we have found none, where a court here has
entertained jurisdiction to annul a foreign will probated here un-
der said section 25.

It is said, however, that jurisdiction in equity has been sus-
tained in other states under statutes similar to or in all respects
like our statute. The cases of *Sneed* v. *Ewing,* 5 J. J. Mar-
shall, 460, 22 Am. Dec. 46-49; *Evansville* v. *Winsor,* 148 Ind.
682, overruling *Harris* v. *Harris,* 61 Ind. 117; and *Marlin* v.
*Stovall,* 48 L. R. A. 142; *Markwell* v. *Thorn,* 28 Wis. 548;
*Goodman* v. *Winter,* 64 Ala. 410, 38 Am. Rep. 13; *Allaire* v.
v. *Allaire,* 37 N. J. L. 312, and *Bowler* v. *Huston,* 39 Grat. 266,
32 Am. Rep. 673, are cited as instances of such holding. In
*Sneed* v. *Ewing,* the will made and originally probated in Indi-
ana had not been probated in Kentucky, but simply recorded

there, pursuant to a statute authorizing it, and, in terms, giving
to any one interested by bill in equity, to be filed in the circuit
court, right to contest the validity of such will, within the same
time and in the same manner as if the will had been admitted
to record originally in that State. We have no such statute.
This case is inapplicable. Like provision for contest of foreign
wills is found in the statute of Indiana, and *Evansville* v.
*Winsor* is therefore inapt. Our examination of the other cases
cited fails to discover their applicability to the proposition for
which they are cited. As the *lex loci rei sitae* governs respect-
ing real estate, statutes giving such right of contest of wills
of real property would, according to most authorities, be valid,
and afford relief there. As it is conceded the will involved here
disposes of both real and personal estate we need not inquire
whether a statute undertaking to confer jurisdiction to con-
test a will as to personalty would be valid or not. The ques-
tion is mooted in a note to *Tremblay* v. *Ins. Co.*, 94 Am. St.
Rep. 559. Many states have statutes like our section 7, chapter
84, of the Code, regulating the transfer of personal property to
another state, for the protection of local creditors and others,
but such statutes do not give or imply right of contest of the will
of one domiciled in another state and probated there. The
argument is made that as by the fourth paragraph of section 22,
on the conditions specified, an original will may sometimes be
probated here, and then be subject to contest, under sections 31
and 32, the statute should be construed to apply to wills admit-
ted to probate here on authenticated copies from other states. We
see little force in the argument. We do not have before us
such a case as the statute contemplates. To give the statute the
construction contended for, would be to confer jurisdiction on
the courts of this state to wholly set aside a will solemnly pro-
bated by the judgment of a court of the domicile, and to disturb
the due administration of his personal estate according to the
law of the place controlling it. We think our statute plainly
designed to avoid any such conflict of jurisdiction, and the evil
consequences that would flow from it. Section 25, we think,
was enacted in recognition of the universal law, that the *lex
domicilii* governs in respect to personal estate at least, and out
of comity and the orderly administration of the entire estate,

real and personal, to confine all parties in interest to the several remedies prescribed therein.

But has equity independently of statute general jurisdiction to set aside a foreign will probated here for fraud in its procurement and probate? We think not. True as to land, the law of this state controls its disposition, but section 25 gives force and effect to the will of one domiciled in another state and probated there, and when admitted to probate here, as provided, becomes as valid and binding as the will of one of our own citizens originally probated here; and after probate, out of comity and for the autonomy of administration refers the question of contest to the courts of the testator's domicile. The argument for general equity jurisdiction is based on the right of the courts of one state to inquire into the jurisdiction of the courts of another state when their judgments are here presented and rights asserted under them; and when obtained by fraud to deny them local efficacy and even avoid them. On the principles of the decisions cited for this proposition, the probate courts of this state may undoubtedly look into the jurisdiction of the foreign court of probate on a motion under our statute to set aside the probate of a will here, but the contest of a foreign will is plainly referred to the original court of probate. The remedy there is complete and ample, when as in Ohio the statute provides therefor, and no valid reason can be assigned for not going into the courts of that state for relief. Indeed the record of this case discloses the fact that a suit to avoid the will here involved was at one time begun there. In this case we have not only the judgment of original probate in Ohio, but of our own court admitting the will to probate here. The authorities cited we think sustain the proposition of appellants that jurisdiction to set aside a will or the probate thereof, is purely statutory. *Norvell* v. *Lessueur*, 33 Grat. 222, holds, first point of the syllabus, that "It is a settled rule of law in Virginia, that the admission of a will to probate generally is conclusive of its validity, both as a will of realty and personalty, which cannot be drawn in question, except on an issue *devisavit vel non* within in the time and in the mode prescribed by the statute." This principle is recognized in *Kirby* v. *Kirby*, 84 Va. 627, 5 S. E. 539. It is held in the latter case that in a suit to contest a will

as provided by our statute a court of equity does not proceed under its general jurisdiction with all the powers incident thereto, but it is limited to the powers conferred by statute. To the same effect is *Coalter's Exor.* v. *Bryan,* 1 Grat. 18. This principle is affirmed in *Goodman* v. *Winter,* 64 Ala. 410, points 2 and 3 of the syllabus. In 1 Woerner, Am. Law of Adm. §227, it is said, approving *State* v. *McGlynn,* 20 Cal. 233, 268, that "Wherever the power to probate a will is given to a probate or surrogate's court, the decree of such court is final and conclusive, and not subject, except on an appeal to a higher court, to be questioned in any other court, or to be set aside or vacated by the court of chancery on any ground." And the author adds: "This language is quoted and approved by Justice Bradley of the Supreme Court of the United States, and received the unanimous assent of the whole court, save that Judges Clifford and Davis qualified it to the extent of claiming jurisdiction for chancery courts in cases where there is no adequate remedy in the probate court for a party injured by perjury or fraud." It cannot even on the theory of inadequate remedy, be said that our statute affords no adequate remedy in  cases of alleged fraud, like the one we have here.

What effect should be given the judgment of probate in Ohio under Art. 4, §1, Const. of the United States, is a question much discussed in the briefs. We do not regard the question very material in the disposition of the case at bar, for the reason that our statute, section 25, chapter 77, gives it all the force of an adjudication, by admitting the will to probate here on an authenticated copy of the record and judgment there. This necessarily comprehends the question there necessarily involved as to the mental capacity of the testator, and by that judgment it was distinctly found that the will in question was the valid last will and testament of the testatrix, that it was duly executed, and that at the time of the making thereof she was of sound and disposing mind and memory and not under undue influence, the exact questions now sought to be litigated in this suit. There is much conflict of decision on this question, but it has generally arisen we think when a foreign will has been presented for probate in another state. See *Martin* v. *Stov-*

*all, supra,* and the elaborate note thereto for a full discussion of the subject. But why discuss the question here? Our statute gives the judgment full faith and credit and admits the will to probate here, and the judgment of probate here is final on all tions involved, and not open to attack except in the manner and upon the grounds provided therein. See *Ruef* v. *District Court,* (Mont.) 6 L. R. A. (N. S.) 617 and note.

Our conclusion is, without further argumentation or citation of authorities, to reverse the decree below and dismiss the bill, but as indicated without prejudice to any other rights appellees may have.

*Reversed and Bill Dismissed.*