# CHARLESTON.

KELLY v. WELLSBURG & STATE LINE R. R. CO.

and

ADAMSON & MURDOCK v. WELLSBURG COAL CO.

Submitted April 10, 1917. Decided April 24, 1917.

1. FORMER OPINION INTERPRETED.

The opinion on the former appeals in these causes, 74 W. Va. 130, adjudicating the rights and priorities of bond holders and other creditors of the underlying companies, interpreted and applied. (p. 307).

2. APPEAL AND ERROR—*Findings of Commissioner in Chancery—Conclusiveness.*

The findings of a commissioner in chancery, on questions of fact, should generally be sustained, unless plainly not warranted by any reasonable view of the evidence, and this rule is entitled to peculiar force in an appellate court when such findings have been sustained by the decree appealed from. (311).

3. ABATEMENT AND REVIVAL — *Death of Party — Revival — Decree — Conclusiveness.*

When in a pending creditors' suit the death of a non-resident defendant and creditor has been suggested, and the suit has been revived against his administrator c. t. a., regularly appointed by the county court, and the cause has been thereafter regularly proceeded with to final decree in favor of the creditors, including the estate of such decedent, the decree is binding upon such estate, and the petition of the residuary legatee, and executor of the will of such non resident creditor, appointed and qualified in the state of his domicile, but who has not qualified as such fiduciary in this state, to set aside or modify such decree, without showing good ground therefor, is properly rejected. (p. 313).

Appeal from Circuit Court, Brooke County.

Suit by John W. Kelly against the Wellsburg & State Line Railroad Company, and suit by Adamson & Murdock against the Wellsburg Coal Company and others. From the decrees of the circuit court, the Wellsburg National Bank, Elizabeth Dilworth Babler, and others appeal, and John J. Coniff, administrator, etc., of the estate of Charles R. Dilworth, deceased, C. W. McQuoid, Elizabeth Thaw, and others take cross-assignments against the Wellsburg National Bank.

*Reversed in part. Affirmed in part.*

80 W. Va.

*J. F. Cree, W. M. Werkman, John C. Palmer, Jr., Joseph R. Curl, Patterson, Crawford, Miller & Arsenberg* and *Chas. H. Stoll,* for appellants.

*John J. Coniff,* in pro. per. *T. S. Riley, for appellees,* McQuoid and others.

*J. W. Ewing,* for appellees Thaw and others.

MILLER, JUDGE:

On a former appeal, wherein the present appellants were appellees, and some of the appellees here were appellants, we undertook, on reversing the decrees below, to settle the principles upon which we thought the rights and interests of the parties should be finally settled, and remanded the causes to be further proceeded with in accordance with the mandate and opinion then certified to the circuit court. 74 W. Va. 130.

We then held that the appellants, composing the so called underwriters, were entitled to preference and priority over the judgment creditors of the underlying companies, not to the full amount of the bonds pledged as collateral, but to the extent of the debts of these companies which had been paid or discharged out of the proceeds of the note, underwritten by them, and in the proportion that they or their assignees had contributed thereto.

Of the present appeals, the first was awarded on the petitions of the Colonial Trust Company, the Rural Valley National Bank, the Punxsutawney National Bank, the McKees Rocks Trust Company, and the Bank of Coal Center, from two decrees pronounced in said causes on March 1, 1916, and in which by petition filed in this court upon the hearing, the Wellsburg National Bank, the City Deposit Bank, the German Savings Deposit Bank, the First National Bank of Johnstown, and William G. Wilkins, have asked to join. The second appeal, was awarded upon the petition of Mrs. Elizabeth Dilworth Babler, who was the widow of the late Charles R. Dilworth, one of said underwriters, from said decrees of March 1, 1916, and also from two decrees subsequently pronounced in said causes on June 24, 1916. And on the hearing here upon these appeals the appellees

have cross-assigned error against the Wellsburg National Bank in the decree of March 1, 1916, whereby the circuit court sustained its exception to the commissioner's report, and adjudged that said bank be admitted to equal priority with said underwriters in the distribution of the proceeds of the sale of the property of the Wellsburg Coal Company, on the basis of the five thousand four hundred and six dollars and seventy five cents, decreed in its favor.

No new questions are presented respecting the rights of the appellants in the former appeal, to priority over the judgment liens, except perhaps as to the judgment in favor of the Wellsburg National Bank, again admitted to equal priority with the present appellees, not by virtue of the judgment in its favor, and considered on the former appeals, but because of its claim as holder of one of the interim bonds of the Wellsburg and Buffalo Valley Company, the holding company, pledged as collateral upon a note, not of the Wellsburg Coal Company, but of Joseph A. West and L. F. Darrall, said bond being one of the one hundred and seventy thousand dollars of bonds herein involved, delivered to West and others, as promoters and stockholders of said underlying companies.

Notwithstanding our holdings on the former appeal, the present appellants, except Mrs. Babler, contended before the commissioner, to whom the causes were referred, for equal priority with the present appellees in the distribution of the assets of the underlying companies, not by virtue of the judgments on which they then rested their claims, but of certain of the one hundred and seventy thousand dollars of interim bonds, which at one time or another they acquired from the holders thereof as collateral to the debts decreed them. The commissioner reported against them, including the Wellsburg National Bank, and the court below confirmed the report of the commissioner, except as to the claim of the Wellsburg National Bank, which was given an equal place in priority with the appellees, and the cross-assignment of error challenges the correctness of this portion of the decrees.

We will first dispose of the appeals by these banks, in which Wilkins has also joined, before disposing of the appeal

of Mrs. Babler. · For a statement of the facts upon which our former decree was predicated, and the relationship of the parties to each other and to the subject matter of the litigation, and leading up to the present appeals, we refer to the opinion of the court pronounced on the former appeal. The interim bonds now relied upon by appellants are of the one hundred and seventy thousand dollars of those bonds acquired by the stockholders, promoters, and organizers of these companies, and for which, so far as the record shows, no consideration was paid by them. They seem to have been delivered to these parties at or about the time of the New York deal, and the note of the holding company, with the collateral as aforesaid, was discounted by the Knickerbocker Trust Company. We said in the opinion on the former appeals that said bonds constituted no liens on the property of the holding or underlying companies. Appellants take shelter, however, under that provision of the opinion which says: "If, however, any of such bonds or certificates were pledged or sold for money used for the purposes of the underlying companies, those who so acquired them, or their assignees, will be entitled to liens for such money, equal in dignity with other liens founded on the bonds, for the interim bonds are based on the bonds of the constituent companies."

It is contended that this saving in the opinion, regardless of the question of when, where, from whom, or how obtained, if only they have been able to show that the money for which these bonds were pledged, was at some time and in some manner used for the purposes of the underlying companies, entitles appellants to be let into equal priority with the holders of the bonds of the underlying companies and the underwriters upon the note of the holding company who paid said note. If this is the proper interpretation of the opinion then it would have been possible for the holders of the interim bonds, or any of them, by subsequently negotiating them, to have swelled the bonded indebtedness of the underlying companies beyond the amount of their bonds, and limited only by the total amount of such interim bonds, and thereby to reduce or impair the securities of the bond holders and underwriters.

Manifestly the legal effect of the so called New York transaction, including the underwriting by the underwriters of said note, the proceeds of which were used to pay off and discharge at least ninety eight thousand dollars of the debts of the underlying companies, and for which one hundred and forty one or one hundred and forty seven of the coal company's bonds had been pledged for its debts, and eleven or fourteen of the bonds of the Wellsburg and State Line Railroad Company had been pledged for its debts, was to subrogate the Knickerbocker Trust Company and said underwriters to the rights of the creditors of said companies. And not only were the bonds of these underlying companies, except those which had been actually sold to third persons, so pledged, but along with them, and with like effect, the bonds and stock of the holding company. And although the interim bonds may have been based on the stock and bonds of the underlying companies, as the latter bonds were hypothecated with the Knickerbocker Trust Company, the trust company and the underwriters were entitled to be first preferred, before the holders of any of the interim bonds, in the distribution of the assets of the underlying companies, and particularly of the one hundred and seventy thousand dollars thereof, for which no consideration was paid; and this would be so notwithstanding the debts for which such interim bonds may have been pledged were the debts of the underlying companies, or were the debts of the promoters or stockholders thereof, for which none of the bonds of the underlying companies had been pledged as collateral. It was certainly not the intention of the court by its former opinion to abrogate or affect the legal rights or status of the former appellants, underwriters of said note, nor must the opinion be given a construction which will admit the present appellants to equal priority with the bond holders of said underlying companies and said underwriters, unless, as manifestly contemplated by such opinion, they may show themselves entitled thereto, upon equitable principles, such as for money expended for betterments, perhaps, or in some way adding to the security of the properties. The opinion was intended to provide for such possible

contingencies only. And that such was our intention is manifest from other provisions of the opinion as follows: "General creditors of a corporation issuing such bonds are conclusively presumed to have extended their credit on the faith of the corporate property subject to the mortgage, in so far as the bonds are issued for money for the corporate purposes." And again: "General creditors of a corporation, whose credits were extended after the execution and recordation of a mortgage upon its property to secure a series of bonds, are deemed, in controversies between them and bona fide holders of the bonds for value, to have extended their credit upon the faith of the corporate property subject to the mortgage."

With respect to the claims of all the appellants to equal priority with the bond holders and underwriters, we are mindful of the fact that the commissioner reported against them, and with the single exception of the Wellsburg National Bank, the court confirmed this report. The rule established by our decisions is that the findings of the commissioner in such cases on the questions of fact should be sustained unless it plainly appears they are not warranted by any reasonable view of the evidence. And it is said that this rule operates with peculiar force in an appellate court when the commissioner's findings have been sustained by the decree appealed from. *Handy* v. *Scott*, 26 W. Va. 710; *Fry* v. *Feamster*, 36 W. Va. 454; *Stewart* v. *Stewart*, 40 W. Va. 65; *Keneweg Co.* v. *Schilansky*, 47 W. Va. 287; *Straight* v. *Ice*, 56 W. Va. 60; *Oneal* v. *Stimson*, 61 W. Va. 551; *Clark* v. *Clark*, 70 W. Va. 434.

With the exception of Mrs. Babler, it is not claimed by any of the appellants, nor is there anything in the evidence showing that any of them held bonds of the underlying companies as security for their debts, or that there are any equities entitling them to such equal priority. The evidence goes no farther than to show that the loans to the underlying companies, or to some of the officers of those companies, were used in connection with the business of those companies, but not for betterments or that they in any way added to the value of the properties covered by the mortgages se-

curing the bonds. So we think it unnecessary to go into a history of the individual claims of appellants, or to further consider the evidence pertaining thereto, with the exception only of the claim of the Wellsburg National Bank.

And before considering the claim of this bank, we observe that counsel for appellants stand in part on the theory that the one hundred and seventy thousand dollars of interim bonds were delivered to them at the time of the New York transaction to take care of the general indebtedness of the underlying companies not provided for by the discount of the note executed to the Knickerbocker Trust Company. The contract in writing between the parties to that transaction will not support this contention. On the contrary, we think it plainly provides otherwise. That contract is that all the debts, except a small amount of the indebtedness of the underlying companies, mentioned in the schedules attached, were to be taken care of by the parties to the first part of that contract, who were the promoters, stockholders and organizers of the underlying companies, so that whether the debts of the appellants be those previously existing or those created subsequently to the making of that contract, there is no basis for their claim to equal priority with the bond holders and underwriters, based on the bonds and mortgages of the underlying companies.

With respect to the decree in favor of the Wellsburg National Bank, the correctness of which is assailed by the cross-appeal, the record shows that the original judgments in favor of this bank were founded upon a note of the Wellsburg Coal Company, of August 10, 1903, for five thousand dollars, and another note of said company for two thousand dollars, and for which bonds of the coal company were pledged as collateral, and aggregating at the time of the original decree, seven thousand six hundred and eighteen dollars and eighty five cents. This was one of the debts which was provided to be paid and apparently was paid out of the proceeds of the note discounted by the Knickerbocker Trust Company, and the bonds held as collateral therefor were surrendered to said trust company. But notwithstanding the original indebtedness was so provided for and paid

through the Colonial Trust Company, the bank appears to have sued upon the original notes, and obtained judgments thereon in 1906. That the original indebtedness was paid through the Colonial Trust Company, there seems to be no doubt, and on the present appeal it is not contended, as we understand it, that the bank holds the original bonds of the underlying companies, or either of them, originally held as collateral to those notes, but that the same were surrendered to the Knickerbocker Trust Company. Its claim to priority is based on interim bond number nine, subsequently pledged by Joseph A. West and L. F. Darrall, for their note for five thousand dollars, the proceeds of which were deposited with the Industrial National Bank, to the credit of Joseph A. West, special, and were disbursed upon his individual checks for various purposes, according to the testimony of the witness Law; but none of these disbursements, within the true interpretation of our opinion on the former appeal, were such as to give the bank equal priority with said underwriters and bond holders. If this money was in fact paid out for the purposes of the underlying companies, as some of it may have been, it was either on account of debts which the parties of the first part to the New York contract, agreed they would pay, or debts subsequently contracted by them, and which are not entitled to rank in priority with said bond holders and underwriters. We are, therefore, of opinion to reverse the decree below, sustaining the exception of this bank to the commissioner's report, and to overrule said exception, and to confirm the commissioner's report as to said claim.

And lastly, with respect to the appeal of Mrs. Babler, she complains that the decree of March 1, 1916, appealed from, did not decree to Charles R. Dilworth, her late husband, or to his estate, his proper share of the proceeds of the sales of the properties of the underlying companies; that instead of the sum of twelve thousand six hundred and six dollars and ninety seven cents, the court should have decreed the sum of twenty three thousand five hundred and seventy dollars and ninety three cents. She also complains that the court by its decree of June 24, 1916, rejected her petition

of intervention, and in place of admitting her as a party, and decreeing to her directly, as residuary legatee, and holder of the fifty one of said interim bonds, held by said Charles R. Dilworth, the court decrees the sum found in favor of said Dilworth to be paid to Jno. J. Coniff, administrator c. t. a. Dilworth, in his life time, was a party defendant to these causes, but died pending the suits, but after answers had been filed by him in both causes. Some time after his death, on motion of T. S. Riley, a creditor, who had been his counsel and prepared and filed his answers, his estate was committed to Jno. J. Coniff, as administrator cum testamento annexo, and these causes were revived against him as such administrator, and were proceeded with to final decree. The questions which Mrs. Babler would present by her petition are, first, whether she or the administrator was entitled to the sum decreed in favor of said estate, and second, whether the sum so decreed was the full sum to which said estate was entitled.

The main grounds alleged for the relief sought by the petitioner is that the deceased was a resident of Pennsylvania; that petitioner was executrix, and that the estate had been fully administered by her in Pennsylvania and in New York; that all debts had been paid, except the claim of said Riley for counsel fees in these causes, which she alleged she was ready and willing to pay upon presentation of a proper bill; that Coniff was appointed administrator without her knowledge or consent, and that as residuary legatee she was the sole owner and holder of the fifty one of the interim bonds which had been allotted to her husband in his life time, as one of the underwriters and contributors to the payment of the note for one hundred and fifty thousand dollars, and that as such residuary legatee and holder of said bonds she, and not Coniff, administrator, was entitled to whatever sum should properly be decreed said estate. She also by her petition would attack the correctness of the decree in favor of the appellee McQuoid, one of said underwriters, and in whose favor a large sum was decreed not only in his original right as one of the underwriters of said note, but as assignee of all of the rights and claims of some of the other

underwriters and of the Knickerbocker Trust Company. The petitioner prays that her petition be treated also as a cross bill for affirmative relief.

Appellees would sustain the decree rejecting said petition upon several grounds: First, that it proposes to attack the decree of March 1, 1916, entered at a previous term, without any showing of error therein on the face of the decree, or of surprise, or discovery of new evidence; and that admitting, as it does, knowledge of the petitioner of the pendency of said suit since 1914, no cause is presented for relief on such grounds; second, that the petition contains no elements of a cross bill, makes no one a party thereto, and there is no prayer for process, though it seeks to affect the rights of persons whose interests are fixed by said decree; third, because the petition on its face shows that the claim of petitioner is based solely upon fifty one interim bonds alleged to be held by her, and that the amount decreed in favor of the administrator is out of the proceeds of the sale of the properties of the underlying companies and is precisely the amount which the holder of said bonds would be entitled to receive if decreed to her instead of the administrator; fourth, that all the relief to which she would be entitled in any event can or will be as well attained through the intervention of the administrator as through her personally.

The record shows that the appointment of Coniff, as administrator, was upon the motion of T. S. Riley, a creditor. The validity of Coniff's appointment is not attacked by petitioner. If it was the attack would be collateral and probably not cognizable in these suits, under the principles enunciated in *Woofter* v. *Matz*, 71 W. Va. 63, and *William James' Sons Co.* v. *Crouch and Mankin*, 72 W. Va. 794. But we need not decide this question. On the face of the record of the county court Coniff's appointment seems regular. True, Dilworth was a non-resident and died testate, and upon the probate of his will in this state his distributees or devisees would be entitled to preference in the administration, under chapter 85, of our Code, but petitioner did not apply for administration, nor attempt to qualify as executrix or administratrix in this state. She predicated her right in her peti-

tion solely upon the interim bonds. If she had qualified under the provision of section 5, of chapter 85, of the Code, her appointment as administratrix might have superseded that of Coniff's. But her petition presents no such case. But suppose she had qualified, and procured the revocation of Coniff's authority, would she have the right on the showing made in her petition to reverse or set aside the decree in favor of any of the appellees? The estate of Dilworth was represented in those decrees by the administrator Coniff, and we think was bound by the prior decrees, unless for some such cause as fraud, mistake or error of law apparent on the face of the record, or newly discovered evidence, prejudicial error therein was made to appear.

But suppose the petitioner had been properly before the court, do the facts alleged, or appearing in the record, entitle her or the estate of her husband to a larger proportion of the assets of the underlying companies than was decreed to the estate of her husband? We cannot so hold. The basis of the decree of distribution was the amount of the interim bonds held by the several underwriters or their assignees, and the evidence in the case satisfies us that McQuoid, by mutual agreement between him and the other underwriters, including Dilworth himself, and as their assignee, and by virtue of his purchase of all of the interim bonds not previously distributed to the other underwriters and held by them, was entitled to the full amount decreed him in the distribution. And it is pertinent to observe in this connection that although some of these transactions occurred pendente lite, there was nothing in the way of the parties agreeing among themselves, as they did agree, that McQuoid, upon his payment of the balance due to the Knickerbocker Trust Company, some thirty thousand dollars, should accede to all their rights as underwriters in the collateral held by the trust company for the payment of said note. Moreover, at the time of these transactions it was doubtful whether McQuoid would ever be able to realize out of said assets the sums he had paid. The decrees formerly appealed from gave priority to the judgment creditors. McQuoid seems to have taken the burden of prosecuting the former appeal,

and to have assumed all the burdens thereof, as a part consideration for the agreement with the other underwriters and the trust company. If the petitioner should succeed upon her petition, the result would be to deprive McQuoid of the fruits of his victory. This would be inequitable and unjust, and for which there would be no warrant in law or in equity.

With the exception of the decree in favor of the Wellsburg National Bank, already indicated, we are of opinion to affirm the decrees appealed from.

*Reversed in part. Affirmed in part.*